In the

# United States Court of Appeals

### For the Seventh Circuit

No. 07-3581

CHARLOTTE V. MUHA and MARY CAJSKI,
 on behalf of themselves and
 all others similarly situated,

*Plaintiffs-Appellants*,

*v.*

ENCORE RECEIVABLE MANAGEMENT, INC.,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 05-C-940—**J.P. Stadtmueller**, *Judge*.

ARGUED SEPTEMBER 8, 2008—DECIDED MARCH 10, 2009

Before POSNER, KANNE, and TINDER, *Circuit Judges*.

POSNER, *Circuit Judge*. The Fair Debt Collection Practices Act, so far as relates to this case, forbids a debt collector (which the defendant is) to "use any false, deceptive, or misleading representation . . . in connection with the collection of any debt." 15 U.S.C. § 1692e. The defendant

sent a dunning letter to credit card debtors, including the plaintiffs and the 7,000 or so other members of the class that the plaintiffs represent, which states (with irrelevant boilerplate language omitted):

> The above referenced account has been referred to our office for collection of the balance in full. Previous attempts have been made by our client to resolve this debt voluntarily. As of this date, those attempts have not been successful. *Therefore, your original agreement with the above mentioned creditor has been revoked.*
>
> Encore Receivable Management, Inc. [the defendant debt collector] has been authorized by our client to provide the necessary effort to collect this debt. We recommend that you take advantage of this opportunity to pay the balance in full to prevent further collection activity.
>
> *    *    *
>
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.

The plaintiffs allege that the sentence that we have italicized in the first paragraph of the letter is false, and they sought to bolster this allegation with deposition testimony that specific provisions of the credit-card contract were

still in effect, in which event the agreement itself had not been "revoked." Certainly the payment requirements of the contract were still in effect—they were the basis of the attempt to collect a "debt" due to the issuer. The plaintiffs argue that this false statement was misleading and confusing, a claim they attempted to support with a consumer survey. The district judge excluded the survey and went on to rule that the challenged sentence is true because it clearly means only that the debtors' credit-card privileges have been revoked; and so he granted summary judgment for the defendant.

The judge was right to exclude the survey. Although the plaintiffs hired a competent survey researcher to conduct it, the questions he asked in the survey were drafted not by him but by the plaintiffs' lawyer. That has turned out to be a mistake. A consumer survey, to be sufficiently objective to be usable as evidence in a suit under the Fair Debt Collection Practices Act, depends among other things on "whether the questions are leading or suggestive." *American Home Products Corp. v. Johnson & Johnson*, 654 F. Supp. 568, 590 (S.D.N.Y. 1987); see also *Johnson & Johnson * Merck Consumer Pharmaceuticals Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 299-300 (2d Cir. 1992); *Pittsburgh Press Club v. United States*, 579 F.2d 751, 759 (3d Cir. 1978); *Weight Watchers Int'l, Inc. v. Stouffer Corp.*, 744 F. Supp. 1259, 1272 (S.D.N.Y. 1990); Bruce P. Keller, "A Survey of Survey Evidence," in *The Litigation Manual* 770 (John G. Koeltl & John S. Kiernan eds. 1999); 6 *Business and Commercial Litigation in Federal Courts* § 75:55, p. 1027 (Robert L. Haig ed., 2d ed. 2005). That the questions were drafted by the plaintiffs' lawyer was apt to make them leading, and did.

The key question—the meaning of "your original agreement with the above mentioned creditor has been revoked"—was rephrased as follows, with a choice of possible answers:

> If a debt collector sent you a letter stating that your agreement with the original creditor has been revoked, what do you feel this statement means?
>
> - There is no longer a contract between the original creditor and me.
>
> - I must pay the debt immediately.
>
> - I do not have to pay the debt because the creditor revoked the agreement.
>
> - I am unsure as to what this means.
>
> - Other.

The survey respondents should have been read (it was a telephone survey) the actual wording of the letter. And the suggested answers omitted the defendant's reading, adopted by the judge—that the recipient's credit-card privileges have been revoked. We add parenthetically that a telephone survey is not an ideal method of testing the understanding of a written statement, since inflection can alter meaning and some written statements are easier to understand when read than when heard.

The plaintiffs argue that only a lawyer could draft the survey questions because a survey researcher would not be familiar with the Fair Debt Collection Practices Act. That is not correct. The questions designed to elicit a consumer's understanding of the meaning of the passage

that we quoted do not require any knowledge of the Act. If they did, the proper response would be for the lawyer to explain the relevant law to the survey researcher.

There is more that is wrong with the survey. There was no control group—no group of survey respondents shown a wording of the dunning letter that the plaintiffs agreed would not be confusing or that simply omitted the challenged sentence. As we explained in *Johnson v. Revenue Management Corp.*, 169 F.3d 1057, 1060 (7th Cir. 1999) (emphasis added), the plaintiff has "to show that the *additional* language of the letters unacceptably increases the level of confusion; many unsophisticated consumers would be confused even if the letters they received contained nothing more than a statement of the debt and the statutory notice." Cf. Phyllis J. Welter, *Trademark Surveys* § 24.03[1][b], pp. 24-28.2 to 28.3 (1998).

The defendant, it is true, makes an unsound objection to the survey—that instead of targeting unsophisticated consumers it surveyed a random sample of consumers. The average consumer is more sophisticated than the unsophisticated consumer because the average is the average of a group that contains sophisticated consumers as well. Yet the law is primarily intended to protect the unsophisticated consumer, e.g., *Taylor v. Cavalry Investments, L.L.C.*, 365 F.3d 572, 574 (7th Cir. 2004); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996), since the sophisticated one can usually fend for himself (that is what "sophistication" means in this context). So a better survey would include questions designed to filter out the sophisticated. But that is of no consequence in this case; a

defendant can only be helped by a survey that includes responses from the sophisticated.

The plaintiffs' lawyer made a damaging admission at oral argument, but we will not hold him to it. He said that without the survey he could not prove that his clients are entitled to a positive amount of statutory damages (he was not seeking actual damages). Not so.

In a suit under the Act other than a class action, the amount of damages is "such . . . damages as the court may allow," 15 U.S.C. § 1692k(a)(2)(A), while in a class action, which this case is, the class itself (which the judge certified) is additionally entitled to an amount of damages "not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector," § 1692k(a)(2)(B), plus attorneys' fees, § 1692k(a)(3). The Act directs the judge, in computing damages, to

> consider, among other relevant factors—
>
> (1) in any individual action under subsection (a)(2)(A) of this section, the frequency and persistence of non-compliance by the debt collector, the nature of such noncompliance, and the extent to which such non-compliance was intentional; or
>
> (2) in any class action under subsection (a)(2)(B) of this section, the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional.

§ 1692k(b). With the possible exception of "the nature of such noncompliance," insofar as it refers to the gravity of the violation, see *Graziano v. Harrison*, 950 F.2d 107, 114 (3d Cir. 1991), or its blatancy, *Crossley v. Lieberman*, 868 F.2d 566, 572-73 (3d Cir. 1989); cf. *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 28 (2d Cir. 1989)—though we are unclear what as a practical matter these inquiries would add to a determination of the "frequency and persistence" of the unlawful activity—the factors listed in the statute are independent of what a consumer survey would show.

Not wanting their appeal to depend on the admissibility of the survey, the plaintiffs argue that if a statement in a dunning letter is false, the district judge need not find that it would not mislead anyone, and that the statement that the debtor's agreement with the issuer of the creditor has been "revoked" is false. Even if we accept the premise, the conclusion would not follow. If the average unsophisticated consumer would not be influenced by a statement rightly or wrongly claimed to be literally false, the case should end right there. *Hahn v. Triumph Partnerships LLC*, 2009 WL 529562 (7th Cir. Feb. 12, 2009); *Wahl v. Midland Credit Management, Inc.*, 2009 WL 426055 (7th Cir. Feb. 23, 2009). As we explained in *Wahl*, at *2-3, the plaintiff "says she is not arguing that the collection letters were 'misleading' or 'deceptive,' but only that they were 'false,' and that the statute creates an important distinction between these concepts. Where a plaintiff alleges that a collection statement is false (rather than deceptive or misleading), [the plaintiff] contends, the only determination for the court is whether

the statement is in fact false . . . . That could not be further from the truth . . . . If a statement would not mislead the unsophisticated consumer, it does not violate the FDCPA— even if it is false in some technical sense. For purposes of § 1692e, then, a statement isn't 'false' unless it would confuse the unsophisticated consumer."

We had earlier pointed out that "there might also be a case in which a false or deceptive statement clearly was immaterial." *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 776-77 (7th Cir. 2007) (citations omitted); see also *Barnes v. Advanced Call Center Technologies, LLC*, 493 F.3d 838, 839, 841 (7th Cir. 2007); *Taylor v. Cavalry Investments, L.L.C.*, *supra*, 365 F.3d at 574-75. The purpose of the Fair Debt Collection Practices Act is to protect consumers, and they don't need protection against false statements that are immaterial in the sense that they would not in-fluence a consumer's decision—in the present context his decision to pay a debt in response to a dunning letter. See *Peters v. General Service Bureau, Inc.*, 277 F.3d 1051, 1056 (8th Cir. 2002).

The plaintiffs' insistence on the "falsity" of the state-ment in the letter about revocation is itself confusing, because the truth or falsity of the statement depends in the first instance on what it means. The defendant argues that the statement ("Therefore, your original agreement with the above mentioned creditor has been revoked") means simply that the debtor's credit-card privileges have been revoked because he didn't pay his debt to the issuer of the card. That is doubtless what it *does* mean, but it could conceivably be misunderstood by an unsophisti-

cated consumer to mean that he has no contractual protections against the issuer—perhaps the issuer can now charge a higher interest rate on the unpaid balance than the rate specified in the contract creating the credit relationship. He might even we suppose think that the opening word of the statement—"Therefore"—which implies that the revocation is due to the failure to pay the outstanding debt—implies that if he pays, his credit-card privileges will be restored. A further possible confusion, though one more likely to be noticed by and bother a lawyer than a consumer, is that when a party is authorized to terminate a contract and does the contract is not said to be "revoked" by him but to be "rescinded," or terminated without liability; but neither of these things seems to have happened in this case. The dunning letter is trying to collect a debt resulting from the recipient's breach of his contract with the issuer of the credit card, implying that the latter is seeking to enforce rather than to rescind the contract.

But the plaintiffs had the burden of proving that the statement was misleading and we must consider whether they could prove that only by a survey, in which event the exclusion of their survey rightly doomed their case. When it is neither clear that a challenged statement is misleading nor clear that it is not, the question whether it is misleading is one of fact, e.g., *Evory v. RJM Acquisitions Funding L.L.C.*, *supra*, 505 F.3d at 776; *Johnson v. Revenue Management Corp.*, 169 F.3d 1057, 1059-61 (7th Cir. 1999); *Walker v. National Recovery, Inc.*, 200 F.3d 500, 501, 503-04 (7th Cir. 1999), and ordinarily, as these cases explain, the best evidence is a responsible survey. But it is not the only

possible evidence. *Durkin v. Equifax Check Services, Inc.*, 406 F.3d 410, 414-15 (7th Cir. 2005); *Johnson v. Revenue Management Corp., supra*, 169 F.3d at 1060-61. Recipients of an allegedly misleading dunning letter can testify that they were misled, and if they are shown to be representative unsophisticated (or, *a fortiori*, sophisticated) consumers, the trier of fact may be able to infer from their testimony that the letter is misleading within the meaning of the Fair Debt Collection Practices Act. *Evory v. RJM Acquisitions Funding L.L.C., supra*, 505 F.3d at 774; *Chuway v. National Action Financial Services, Inc.*, 362 F.3d 944, 948 (7th Cir. 2004).

The district judge excluded the survey, which was correct, as we have explained; but he then terminated the case on the ground not that the plaintiff had no other evidence but that the meaning of "revoked" was unequivocal and clear and could not mislead even an unsophisticated consumer. But we have seen that this is not so. The defendant's letter was not so palpably misleading as to entitle the plaintiffs to summary judgment, but neither was it so palpably not misleading as to entitle the defendant to summary judgment.

Were the plaintiffs seeking actual damages rather than just statutory damages, they would have to present some evidence that they were misled to their detriment. *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir. 1997). Their only evidence that anyone was misled is the survey, which means they have no admissible evidence that they were misled. But that is of no moment since they are seeking only statutory damages. *Id*. In *Bartlett* we explained that

the inclusion of a confusing statement in a dunning letter can violate the Act by distracting the reader from the notice of his statutory rights, and that this is something that a judge in a particular case may be able to determine without evidence. *Id*. at 500-01.

This case is similar. We cannot understand the function of the challenged sentence. The defendant unhelpfully explains that "stating that the mutuality of the original agreement—the extension of a credit line in exchange for repayments with interest—no longer exists is an accurate summation of the situation when the collection of the debt has been turned over to a collection agency." That may be true, but what has it to do with the recipient's obligation? If he is being dunned, it is because he owes money to the issuer of the credit card, having failed to respond to the issuer's demand ("Previous attempts have been made by our client to resolve this debt voluntarily. As of this date, those attempts have not been successful"). It's as if the letter said, "you owe us money, and by the way don't try to charge anything more on this credit card, because it's been revoked."

The second clause in our paraphrase is gratuitous and confusing. Granted, "confusing" is not a statutory term; the term is "false, deceptive, or misleading," 15 U.S.C. § 1692e, and none of these is a synonym for "confusing." But the purpose of the statute is to prevent "abusive debt collection practices," 15 U.S.C. § 1692(e), and "false, deceptive, or misleading" should be interpreted accordingly. Confusing language in a dunning letter can have an intimidating effect by making the recipient feel that he

is in over his head and had better pay up rather than question the demand for payment. Cf. *Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222, 1226 (9th Cir. 1988) (per curiam). The intimidating effect may have been magnified in this case by the reference to revocation, which might have suggested to an unsophisticated consumer that any right he might have to challenge the demand for payment had been extinguished by the revocation of his contract with the issuer, the original creditor.

But the broader point is that the debt collector must not obscure (or, as the cases often say, "overshadow") the statutorily required validation notice ("Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid"). E.g., *McKinney v. Cadleway Properties, Inc.*, 548 F.3d 496, 502-03 (7th Cir. 2008); *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 758-59 (7th Cir. 2006); *Sims v. GC Services L.P.*, 445 F.3d 959, 963-65 (7th Cir. 2006); *Olson v. Risk Management Alternatives, Inc.*, 366 F.3d 509, 512-13 (7th Cir. 2004); *Bartlett v. Heibl, supra*, 128 F.3d at 500; *Russell v. Equifax A.R.S., supra*, 74 F.3d at 32-35; *Swanson v. Southern Oregon Credit Service, Inc., supra*, 869 F.2d at 1224-26; see 15 U.S.C. § 1692g. He must not make the unsophisticated consumer "uncertain as to her rights." *Russell v. Equifax A.R.S., supra*, 74 F.3d at 35.

Yet we do not think that the present case is so clear as to entitle the plaintiffs to summary judgment. Unlike previous cases, the confusing statement did not appear

in or adjacent to the notice of the plaintiffs' right to challenge the debt, and it was not, as in most of those cases, a flat-out contradiction of anything in the letter, though this depends on just what an unsophisticated consumer would understand it to mean. The focus in the district court, moreover, was on the survey evidence and on whether the challenged sentence in the defendant's letter was literally false. With those issues out of the way, the district judge and the parties can focus on the critical issue, which is that of confusion. Perhaps the defendant can explain why the sentence was included and justify the inclusion. He should be asked to do so, because there is enough indication of confusion to place a burden of production on the defendant.

The grant of summary judgment in favor of the defendant (and the dismissal of the suit, based upon that grant) was premature and is therefore reversed, and the case is remanded to the district court for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.