RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 09a0136p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

PEGGY MILLER,

            *Plaintiff-Appellant,*

UNITED STATES OF AMERICA,

            *Intervenor,*

    *v.*

JAVITCH, BLOCK & RATHBONE; DIANA J.
PREHN; BRIAN C. BLOCK,

            *Defendants-Appellees.*

No. 08-3336

>

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 06-00828—Michael R. Barrett, District Judge.

Argued: December 3, 2008

Decided and Filed: April 6, 2009

Before: COLE and COOK, Circuit Judges; EDMUNDS, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Stephen R. Felson, LAW OFFICE, Cincinnati, Ohio, for Appellant. Michael D. Slodov, JAVITCH, BLOCK & RATHBONE, Cleveland, Ohio, for Appellees. Howard S. Scher, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Intervenor. **ON BRIEF:** Stephen R. Felson, LAW OFFICE, Cincinnati, Ohio, Steven C. Shane, STEVEN C. SHANE, ATTORNEY AT LAW, Bellevue, Kentucky, for Appellant. Michael D. Slodov, JAVITCH, BLOCK & RATHBONE, Cleveland, Ohio, for Appellees. Howard S. Scher, Michael S. Raab, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Intervenor.

     COOK, J., delivered the opinion of the court, in which EDMUNDS, D. J., joined. COLE, J. (pp. 13-20), delivered a separate dissenting opinion.

_____

[*] The Honorable Nancy G. Edmunds, United States District Judge for the Eastern District of Michigan, sitting by designation.

———————————

**OPINION**

———————————

COOK, Circuit Judge.  Peggy Miller filed a putative class action against law firm Javitch, Block & Rathbone and two of its agents (collectively, "JBR") under the Fair Debt Collection Protection Act ("FDCPA").  15 U.S.C. §§ 1692e *et seq*.  Miller contends that JBR violated the FDCPA by using false, deceptive, and misleading language in a debt-collection complaint.  The district court first granted judgment on the pleadings on the falsity claim, and then entered summary judgment in favor of JBR as to the remaining claims.  Miller appeals, and because we agree with the district court that Miller failed in her burden to raise a genuine issue of fact regarding a statutory violation by JBR, we affirm.

I.

This case centers on a form debt-collection complaint drafted and used by JBR in numerous state-court suits, including one filed against Peggy Miller in Scioto County, Ohio.  Miller accrued debt on a credit card issued by Providian National Bank.  The bank sent her monthly statements detailing the charges on her "Providian Visa Card," and she paid the statements with checks made out to "Providian."  But after she stopped making payments—a fact she does not dispute—Providian sold Miller's debt to Palisades Collection LLC ("Palisades").  Palisades then hired JBR, and JBR filed the state-court complaint that prompted this class-action suit.

The state court "COMPLAINT FOR MONEY LOANED" read as follows:

> 1.  Plaintiff acquired, for a valuable consideration, all right, title and interest in and to the claim set forth below originally owed by Defedant(s) to ASTA II/PROVIDIAN -03 /NAT
> As a result of the assignment, Plaintiff became, and now is, the owner of funds loaned on account number xxxx-xxxx-xxxx-0736.

> 2.  There is presently due the Plaintiff from the Defendant (s) on the money loaned on defendant's charge card debt, the sum of $4,604.56.

3.   Plaintiff notified Defendant (s) of the assignment and demanded that Defendant (s) pay the balance due on the account, but no part of the forgoing balance has been paid.

4.  Defendant (s) is/are in default on this repayment obligation.

WHEREFORE, Plaintiff prays for judgment against Defendant (s) in the amount of $4,604.56 with statutory interest from the date of judgment, costs of this action, and such other and further relief as the Court deems just and proper under the circumstances.

[signature block omitted]

Miller admits that when she read the complaint, she "pretty much" understood it.  She took the complaint to a lawyer who responded to it by moving for a more definite statement.  JBR then voluntarily dismissed the suit, as large volume collection firms often do when met with resistance.

Miller then went on the offensive in federal court, suing JBR on behalf of herself and others similarly situated.  She claimed that JBR—a "debt collector" for purposes of the FDCPA, *see Heintz v. Jenkins*, 514 U.S. 291, 299 (1995)—violated the FDCPA by including false, deceptive, and misleading language in its state-court complaint.  JBR answered and moved for a judgment on the pleadings.[1]  The district court granted the motion in part, finding that Miller failed to state a claim when she alleged that "for money loaned" amounted to a false statement.   But the court—attentive to how a true statement may still be misleading—also denied JBR's motion in part, finding that Miller stated a claim with respect to four potentially misleading statements:  (1) the complaint was "for money loaned," (2) Palisades was "the owner of funds loaned on account number xxxx . . ."; (3) "there is presently due the Plaintiff from the Defendant(s) on the money loaned on defendant's charge card debt . . ."; and (4) "Plaintiff acquired, for valuable consideration, all right, title, and interest in and to the claim set forth below originally owed by Defendant(s) . . . ."

---

[1]JBR also argued that the FDCPA violates the First Amendment's Petition Clause.  The United States, as intervenor, defends the FDCPA's constitutionality. The district court bypassed the constitutional issues and granted JBR summary judgment on other grounds.  We do the same.  And because affirming on the merits affords a more straightforward resolution, we also sidestep JBR's arguments that Miller waived certain claims and that the bona-fide-error defense shields JBR from liability.

The matter never reached a jury. After discovery, the district court examined the evidence and found nothing to suggest that these four statements qualified as deceptive or misleading under the FDCPA. Accordingly, the district court granted JBR's summary judgment motion. Miller appeals the district court's judgment on the pleadings and its summary judgment.

## II.

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debts collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA's relevant sections read:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> . . .
>
> (2) The false representation of—(A) the character, amount, or legal status of any debt;
>
> . . .
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.
>
> . . .
>
> (12) The false representation or implication that accounts have been turned over to innocent purchasers for value.

15 U.S.C. § 1692e.

These provisions sweep with "extraordinar[y]" breadth, *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992), and call for "strict liability, . . . meaning that a consumer may recover statutory damages if the debt collector violates the FDCPA even if the consumer suffered no actual damages," *Fed. Home Loan Mortgage Corp. v.*

*Lamar*, 503 F.3d 504, 513 (6th Cir. 2007) (citing 15 U.S.C. § 1692k(a)). This court, in determining whether a statement qualifies as misleading, employs an objective, "least-sophisticated-consumer" test. *Kistner v. Law Offices of Michael P. Margelefsky LLC*, 518 F.3d 433, 438–39 (6th Cir. 2008). This standard "protects naive consumers [while] prevent[ing] liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." *Id.* (quoting *Lamar*, 503 F.3d at 509–10). Stated differently, we "will not 'countenance lawsuits based on frivolous misinterpretations or nonsensical interpretations of being led astray.'" *Lamar*, 503 F.3d at 514 (quoting *Jacobson v. Healthcare Fin. Servs. Inc.*, 434 F. Supp. 2d 133 (E.D.N.Y. 2006)).

Applying these principles to Miller's claim, we begin by analyzing the district court's judgment on the pleadings, and then consider its summary judgment.

A.

JBR's state-court complaint characterized Miller's credit-card debt as a loan. Miller thinks that description counts as false under the FDCPA. Credit-card debt, so her argument goes, is actually a merchant's account receivable, not a loan. The district court rejected this position in its judgment on the pleadings. Reviewing the issue de novo, *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 389 (6th Cir. 2007), we agree with the district court and rely on its well-reasoned analysis:

> Typically, credit card debt is one that is considered "an account" where there is a balance sheet of sorts that lists the purchases made with the credit card and the payments received by the card issuer. This approach of calling it a loan is a novel one. Although the Ohio Rules of Civil Procedure do provide for a complaint for money loaned, the question is whether or not a claim that has historically been one on an account can now be plead as one for money loaned. Defendant cites a handful of cases from other circuits and state courts as well as various other secondary sources for the proposition that a credit card transaction equates to a loan by the credit card issuer to the credit card holder.
>
> In *In re Mercer*, 246 F.3d 391, 406 (5th Cir. 2001), a bankruptcy discharge case, the Court stated that ". . . by each card-use, [the debtor]

requested a loan against that line; and by approving each card-use, and therefore reimbursing the merchant, including an ATM owner, USC [the credit card issuer] made a loan to her."

. . .

Defendants also cite *May Co. v. Trusnick*, 54 Ohio App.2d 71, 75 (8th Dist. App. 1977), a statute of limitations case involving the failure of a debtor [Trusnik] to timely pay for purchases placed on an account at a retail store [The May Company]. The *May* Court cited *Harris Trust and Savings Bank v. McCray* (1974), 21 Ill. App. 3d 605, 316 N.E. 2d 209. In *Harris Trust* the issuer of a bank credit card sued the cardholder to recover the balance due on the cardholder's account. Harris Trust argued that the cause of action arose when the cardholder failed to repay the bank for funds advanced to the merchant. The Court agreed with Harris Trust and held "money advanced to a merchant in payment for merchandise received by the defendant constitutes a loan." *Id*. at 608. The *May* Court distinguished *Harris Trust* by stating that, "[i]n the present case the purchase money was loaned by The May Company, not by a third party as in Harris Trust, supra." *May Co. v. Trusnik*, 54 Ohio App. 2d at 75. The factual allegations of the underlying state court collection case are more in line with *Harris Trust* whereby a credit card company issued a credit card to Miller who in turn used the credit card to make purchases at merchant stores.

The *Harris Trust* Court provided a good summary of the credit card issuer/holder relationship:

> The bank credit card system involves a tripartite relationship between the issuer bank, the cardholder, and merchants participating in the system. The issuer bank establishes an account on behalf of the person to whom the card is issued, and the two parties enter into an agreement which governs their relationship. This agreement provides that the bank will pay for cardholder's account the amount of merchandise or services purchased through the use of the credit card and will also make cash loans available to the cardholder. It also states that the cardholder shall be liable to the bank for advances and payments made by the bank and that the cardholder's obligation to pay the bank shall not be affected or impaired by any dispute, claim or demand by the cardholder with respect to any merchandise or service purchased.
>
> *Harris Trust & Sav. Bank v. McCray*, 21 Ill. App. 3d 605, 607-608 (Ill. App. Ct.1974).

Based upon the reasoning in *Harris Trust*, the fact that money was actually paid by the credit card issuer to merchants on the credit card holders' behalf, and Form 5 in the Ohio Rules of Civil Procedure, the Court finds that the filing of an action for "money loaned" by a credit card issuer or its successor to recover funds owed from a credit card holder does not violate the FDCPA.

The district court's conclusion finds additional support in Miller's credit-card agreement with Providian, where she "promise[d] to pay [Providian] when due all amounts *borrowed*." (emphasis added). The record also includes evidence of nine instances where Miller used her credit card to secure cash advances from automated-teller machines ("ATMs"). Finally, Miller's brief to this court concedes that "as a legal matter the word 'loan' may or may not be accurate." For these reasons, the complaint's references to "money loaned" are not actionable here as false statements. The Seventh Circuit's decision in *Beler v. Blatt, Hanenmiller, Leibsker & Moore, LLC*, 480 F.3d 470 (7th Cir. 2007), which addressed a complaint's "confusing description" of a credit-card-debt transaction, *id*. at 472, articulates the problem with Miller's claim:

> [Not] everything a lawyer writes during the course of litigation must be stated in plain English understandable by unsophisticated consumers. However desirable that might be, it is not a command to be found in the FDCPA.
>
> Section 1692e does not require clarity in all writings. What it says is that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. A rule against trickery differs from a command to use plain English and write at a sixth-grade level. . . . Whatever shorthand appeared in the complaint—the payments system through which credit-card slips flow is complex, and even many lawyers don't grasp all of its details—was harmless rather than an effort to lead anyone astray. It was the judge, not [the plaintiff], who had to be able to determine to whom the debt was owed, for it is the judge (or clerk of court) rather than the defendant who prepares the judgment specifying the relief to which the prevailing party is entitled.

*Id*. at 473 (internal quotation marks omitted).

Like the dissent, we "permit Javitch some leeway for the use of legal terms of art and other language that might be difficult for the least-sophisticated consumer to

understand." Thus, even if JBR could have drafted its complaint using plainer language, and even if it novelly styled the claim as one "for money loaned," JBR did not go so far as to falsely describe Miller's debt. *See Evans v. Midland Funding LLC*, 574 F. Supp. 2d 808, 813 (S.D. Ohio 2008) (holding in an FDCPA credit-card debt case "that the allegations in the state court complaints at issue here were not false insofar as they sought recovery 'for money loaned'").

B.

Turning to the district court's summary judgment, we conduct a de novo review. *Jones v. Potter*, 488 F.3d 397, 402 (6th Cir. 2007). Drawing all inferences in Miller's favor, we affirm where no genuine issue exists as to any material fact and where JBR is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Miller argues that the same four statements we cite above from JBR's complaint deceive or mislead by wrongly implying that Providian actually transferred funds to her. The district court, examining the evidence gathered in discovery, determined that Miller failed to raise a genuine issue of material fact. Addressing the first three statements, the district court correctly explained:

> Plaintiff has presented no affidavits, other than one from Plaintiff's counsel, no surveys, no expert opinion, nothing to demonstrate that a genuine issue of fact exists. In fact, Plaintiff admits that when she first saw the state court complaint she was not confused. . . . [Additionally,] the Court notes that the Plaintiff stated in her deposition that she read the state court complaint, and that she "pretty much" understood it.

*Miller v. Javitch, Block & Rathbone*, 534 F.Supp. 2d 772, 776-77 (S.D. Ohio 2008).

Miller argues that the district court's reasoning contravenes *Kistner*, a case decided after the district court granted JBR summary judgment. In particular, Miller focuses on the district court's comment that "[h]ad the state court complaint stated only that it was a 'complaint for money loaned' [then] this inquiry may very well have turned out differently." This observation, Miller asserts, triggers *Kistner*'s requirement that any statement susceptible to "more than one reasonable interpretation" raises a genuine issue

of material fact. 518 F.3d at 441. But Miller's reliance on *Kistner* is misplaced because that case involved a communication containing "conflicting aspects." *Id*. at 440. No such conflict exists here; JBR's complaint is susceptible to just one reasonable reading. And contrary to Miller's suggestion, the district court did not imply otherwise when it noted that the "inquiry may very well have turned out differently" had other language been omitted. That comment merely shows that the district court properly assessed the complaint's meaning as read in its entirety. *See Lamar*, 503 F.3d at 510 (observing that the least-sophisticated-consumer standard assumes that the document at issue "is read in its entirety, carefully and with some elementary level of understanding") (quoting *In re Martinez*, 266 B.R. 523, 532 (Bankr. S.D. Fla. 2001)). And read as a whole—referring to a "charge card," specific account number, and "balance due on the account"—the complaint did not mislead. *Miller*, 534 F. Supp. 2d at 777 ("Even the least sophisticated consumer would be able to know if the account number stated in the underlying complaint was one that belong[ed] to him or her."); *see also Beler*, 480 F.3d at 474 (commenting that not "everything a lawyer writes during the course of litigation must be stated in plain English understandable by unsophisticated consumers"). Nor does the complaint deceive, particularly because Miller does not use that term "in the traditional sense." *Harvey v. Great Seneca Fin. Corp*., 453 F.3d 324, 332 (6th Cir. 2006). She "never denied in her complaint that she owed . . . a debt," and she does not claim that JBR "misstated or misrepresented the amount that she owed." *Id*.

Miller focuses on the complaint's failure to use the words "credit card." Even if including those words would have clarified, omitting them did not impermissibly mislead. Again, we read the complaint as a whole, *see Lamar*, 503 F.3d at 510, conscious of its mention of Miller's credit-card account number and the "balance due on the account." Given those statements, we agree with the district court: "the least sophisticated consumer, with a careful reading of the entire state court complaint, would understand that he or she was being sued for the collection of an unpaid credit card balance." It bears repeating that she admits having "pretty much" understood the complaint.

Nor does the complaint's reference to a "charge card" render it misleading. Regardless of how a credit card differs from a charge card, that difference would not mean so much to the least sophisticated consumer that he or she would be misled by the use of one term instead of the other. Granted, a lawyer "closely parsing [the complaint] like a municipal bond offering" may detect some ambiguity or confusion. *Jacobson*, 434 F. Supp. 2d at 138. But the least-sophisticated-consumer standard is not so exacting. It does not require reading the complaint with "the astuteness of a 'Philadelphia lawyer.'" *Jacobson*, 434 F. Supp. 2d at 138 (quoting *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996)). We read the complaint in its entirety and give it a "common sense appraisal." *Id*. Doing so, we conclude that the complaint would not mislead or deceive the least-sophisticated consumer.

As for Miller's interpretation of the fourth potentially misleading statement—"Plaintiff acquired, for valuable consideration, all right, title and interest in and to the claim set forth below originally owed by Defendant(s) to ASTA II/Providian-03/NAT"—we again side with the district court. Miller contends that this statement violates § 1692(e)(12) by falsely or misleadingly implying that Providian assigned her debt to an innocent purchaser for value who enjoyed protection under the holder-in-due-course rule. She insists that this acquired-for-value statement would dupe the least-sophisticated consumer into thinking that Palisades enjoyed holder-in-due-course protection. We think not. The statement says nothing about holders in due course. And no reason exists to think that the least-sophisticated consumer gives any thought to holders in due course—by definition, the least-sophisticated consumer lacks any knowledge of the *concept*. Also, as we and the dissent agree, "some leeway" must be given for the use of legal terms.

The district court's analysis, following our decision in *Lamar*, 503 F.3d at 514, properly relied on insights from a New York district court to expose the flaw underlying Miller's holder-in-due-course position:

> Ironically, it appears that it is often the extremely sophisticated consumer who takes advantage of the civil liability scheme defined by [the FDCPA], not the individual who has been threatened or misled. The

cottage industry that has emerged does not bring suits to remedy the "widespread and serious national problem" of abuse that the Senate observed in adopting the legislation, 1977 U.S.C.C.A.N. 1695, 1696, nor to ferret out collection abuse in the form of "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process." *Id.* Rather, the inescapable inference is that the judicially developed standards have enabled a class of professional plaintiffs.

The statute need not be applied in this manner . . . [A proper] understanding of the least sophisticated consumer standard points away from closely parsing a debt collection letter like a municipal bond offering and towards a common sense appraisal of the [communication].

It is interesting to contemplate the genesis of these suits. The hypothetical Mr. Least Sophisticated Consumer ("LSC") makes a $400 purchase. His debt remains unpaid and undisputed. He eventually receives a collection letter requesting payment of the debt which he rightfully owes. Mr. LSC, upon receiving a debt collection letter that contains some minute variation from the statute's requirements, immediately exclaims "This clearly runs afoul of the FDCPA!" and—rather than simply pay what he owes—repairs to his lawyer's office to vindicate a perceived "wrong." "[T]here comes a point where this Court should not be ignorant as judges of what we know as men." *Watts v. State of Ind.*, 338 U.S. 49, 52 (1949).

*Jacobson*, 434 F. Supp. 2d at 138–39.

We also reject Miller's claim on materiality grounds. Writing for the Seventh Circuit, Judge Easterbrook recently observed that "[m]ateriality is an ordinary element of any federal claim based on a false or misleading statement." *Hahn v. Triumph P'ships LLC,* ___F.3d___, 2009 WL 529562, at *2 (7th Cir. Mar. 4, 2009) (citing *Carter v. United States*, 530 U.S. 255 (2000); *Neder v. United States*, 527 U.S. 1 (1999)). Seeing no "reason why materiality should not equally be required in an action based on § 1692e," Judge Easterbrook found a statement "false in some technical sense" immaterial. *Id.* (quoting *Wahl v. Midland Credit Mgmt., Inc.*, ___F.3d___, 2009 WL 426055, at *3 (7th Cir. Feb. 23, 2009)). "A statement cannot mislead unless it is material, so a false but non-material statement is not actionable." *Id.* We agree. Miller,

along with the dissent, relies on a too technical reading of the complaint. Appraising the complaint in a common sense way convinces us that, just as Miller "pretty much" understood JBR's language, so too would the least-sophisticated consumer.

III.

We affirm.

---

**DISSENT**

---

COLE, Circuit Judge, dissenting.  Because I cannot say with confidence that no reasonable jury could find this document to be misleading from the perspective of the least-sophisticated consumer, and because it is potentially misleading in a way that harms interests the Fair Debt Collection Practices Act ("FDCPA") was designed to protect, I believe the proper course is to submit this question to a jury.  The first three sentences of this six-sentence complaint contain literally false statements, and although this document is an attempt to collect credit-card debt, it never uses the term "credit card."  I respectfully dissent.

**A.      The document is confusing on its face**

The state-court complaint at issue in this case appeared as follows:

IN THE SCIOTO COUNTY CLERK OF COURTS
SCIOTO COUNTY

| | | |
|---|---|---|
| Palisades Collection LLC | ) | |
|   Assignee of Providian National Bank | ) | |
| 210 Sylvan Avenue | ) | CASE NUMBER: |
| | ) | |
| Englewood Cliffs, NJ 07632 - | ) | |
| | ) | JUDGE: |
|     Plaintiff | ) | |
| vs. | ) | |
| | ) | COMPLAINT FOR MONEY LOANED |
| Peggy Miller | ) | |
| AKA Peggy A. Miller | ) | |
| 1315 9Th St. | ) | |
| Portsmouth, OH 45662 - | ) | |
| | ) | |
|     - | ) | |
| | ) | |
|     Defendant (s) | ) | |

1. Plaintiff acquired, for a valuable consideration, all right, title and interest in and to the claim set forth below originally owed by Defedant(s) to ASTA II/PROVIDIAN -03 /NAT
As a result of the assignment, Plaintiff became, and now is, the owner of funds loaned on account number xxxx-xxxx-xxxx-0736.

2. There is presently due the Plaintiff from the Defendant (s) on the money loaned on defendant's charge card debt, the sum of $4,604.56.

3. Plaintiff notified Defendant (s) of the assignment and demanded that Defendant (s) pay the balance due on the account, but no part of the forgoing balance has been paid.

4. Defendant (s) is/are in default on this repayment obligation.

WHEREFORE, Plaintiff prays for judgment against Defendant (s) in the amount of $4,604.56 with statutory interest from the date of judgment, costs of this action, and such other and further relief as the Court deems just and proper under the circumstances.

[signature block omitted]

(*See* Joint Appendix 18).

Javitch's state-court complaint is, without a doubt, confusing. The terms "complaint for money loaned" seem inconsistent with the reference to a "charge card debt," since we do not tend to think of credit card companies as "loaning" us "money." Rather, we usually talk in terms of having "credit-card debt" or an "account" with a credit card company that may be "overdue" or have an "outstanding balance." To illustrate the point, consider a bank customer who goes into a bank branch and asks for some of the money he had "loaned" to the bank—although this would be a technically correct way of asking to withdraw money from a savings account, it would almost certainly confuse the teller. Granted, Javitch's complaint also refers to the "balance due on the account," but the "money loaned" language, which is prominently placed in the caption and repeated within the document, creates confusion and seems to refer to a traditional, one-time loan from a lender, which, unlike a credit card issuer, loans money directly to consumers. Furthermore, the reference to "money loaned *on* defendant's charge card debt" (emphasis added) could cause a reader to wonder if the "money loaned" referred to a separate loan from the "charge card debt," as in "money loaned *on* plaintiff's house." In fact, Miller testified that she did not understand the sentence

containing the "money loaned on defendant's charge card debt" and that she was confused by the fact that the document was entitled "Complaint for Money Loaned."

In addition to being generally confusing, the complaint includes three false statements, one in each of the first three sentences. First, it refers to Palisades, the debt-buyer, as the "owner of funds loaned." Palisades does not and never did own the funds that were "loaned" by Providian—rather, it owns the debt that formerly belonged to Providian. This may seem like a fine distinction, but the "owners" of the funds that Providian "loaned" are the merchants to whom those funds were paid in exchange for goods and services provided to Mrs. Miller. Second, despite the fact that the complaint seeks a judgment based on a credit-card debt, the words "credit card" are inexplicably omitted from the document. Instead, there is a single reference to "charge card debt." A "charge card" is not the same as a "credit card." The latter involves a revolving credit arrangement in which an outstanding balance may be carried from month to month, while the former must be paid off in full at the end of each billing cycle. *See, e.g.*, Consumer Information, "Credit and Charge Cards," Federal Reserve Bank of San Francisco, *available at* http://www.frbsf.org/publications/consumer/cards.html. According to Javitch's brief, Mrs. Miller applied for a Providian "credit card," so the statement in the complaint that Mrs. Miller borrowed funds with a "charge card" also appears to be false.

Third, the complaint refers to a "claim . . . originally owed by Defendant(s) to ASTA II/PROVIDIAN -03/NAT." It is incorrect to say that a debtor "owes" a "claim" to anyone—this is yet another false statement—impressive for a document consisting of about fifteen lines of text. One could guess that the drafter intended to say that Palisades owns a claim against the debtor formerly owned by "ASTA II/PROVIDIAN -03/NAT," but that is not what the document says. In addition to the fact that the statement is incorrect, a debtor would almost certainly be confused about what "ASTA II/PROVIDIAN -03/NAT" actually is. The majority defines this term for its readers as "Providian,"—a definition that may not be strictly correct—but the state-court complaint offered no such definition for the benefit of the debtor, and I am quite sure that Mrs.

Miller, when she entered into a credit card agreement, did not imagine herself to be dealing with an entity called "ASTA II/PROVIDIAN -03/NAT." What "ASTA II" and "-03/NAT" refer to remains a mystery to the debtor and to me (and, apparently, to the majority).

Also, the "for money loaned" language is arguably false because, in addition to any amounts paid to merchants on Mrs. Miller's behalf, the sum sought by Javitch almost certainly includes a significant amount of penalty fees and penalty interest added to her account balance before the debt was charged off. *See, e.g.*, *Discover Bank v. Owens*, 822 N.E.2d 869 (Ohio Mun. Ct. 2004) (denying on equitable grounds action to collect credit-card debt primarily composed of late fees and penalty interest, rather than amounts advanced for purchases). Therefore, while part of the relationship between the debtor and the credit-card issuer can be described as a series of loans, it is potentially very misleading to refer to the entire account balance as "money loaned." And, of course, the only way to know for sure how much of the "sum of $4,604.56" is *actually* "for money loaned" is to examine the accounting required by Ohio Rule of Civil Procedure 10(D)(1) (*see infra*).

The majority claims that the literal falsehoods in the complaint may be overlooked because the least-sophisticated consumer would not be savvy enough to know that they were false. It is not clear to me that this is an appropriate use of the least-sophisticated-consumer test, which was primarily intended as a sword for consumers, not a shield for debt-collectors making false statements. *See Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 438 (6th Cir. 2008) ("[The] test is *designed* 'to ensure that the FDCPA *protects* all *consumers*, the gullible as well as the shrewd.'" (quoting *Fed. Home Loan Morgage Corp. v. Lamar*, 503 F.3d 504, 509 (6th Cir. 2007) (emphasis added)). I acknowledge that an additional purpose of the test is to "'prevent liability for bizarre or idiosyncratic interpretations of collection notices,'" *id.*, but the only thing "bizarre" and "idiosyncratic" in this case is the wording of Javitch's complaint. *See also Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 95 (2d Cir. 2008) (noting that the "mischief" the FDCPA was "designed to address" is that of debt-

collectors, and "the Act is primarily a consumer protection statute" and reversing the grant of summary judgment in the district-court decision relied on and quoted at length by the majority). Even if it is correct that a lender should not be held liable for immaterial false statements that clearly lack a tendency to mislead, *cf. Muha v. Encore Receivable Mgmt.*, __ F.3d __, No. 07-3581, 2009 WL 593135, at *3-4 (7th Cir. Mar. 10, 2009), the fact that half of the sentences in this document contain literally false statements seems to me to weigh in favor of allowing a jury to decide whether the least-sophisticated-consumer test has been met.

I recognize that the document at issue is not a collection letter; it is a state-court complaint, which is a legal document. Therefore, I believe that we must permit Javitch some leeway for the use of legal terms of art and other language that might be difficult for the least-sophisticated consumer to understand. *See, e.g.*, *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 473 (7th Cir. 2007) (stating that if the FDCPA applies to state-court complaints, it does not require that all language in the complaint be understandable by unsophisticated consumers). However, we have held that an affidavit attached to a state-court complaint is a "communication" such that the FDCPA forbids it from containing misleading statements, *see Gionis v. Javitch, Block & Rathbone, LLP*, 238 F. App'x 24, 30 (6th Cir. 2007), and if an affidavit attached to a complaint is covered by the FDCPA's prohibition of "false representation[s] [and] deceptive means" in debt collection, then surely the complaint is covered as well. *Id.* (quoting 15 U.S.C. § 1692e(10)); *see also Heintz v. Jenkins*, 514 U.S. 291, 292 (1995) ("[FDCPA] applies to a lawyer who 'regularly,' *through litigation*, tries to collect consumer debts."). False statements and a consistent effort to misconstrue the nature of the debt owed cannot be excused by the fact that they are found in a legal document.

**B.        The confusing language is primarily directed at state judges, not debtors**

Unlike most allegedly misleading language challenged under the FDCPA, it seems likely that the "for money loaned" language was not meant to encourage the debtor to pay, nor even drafted with the debtor primarily in mind. *Cf. Kistner*, 518 F.3d at 441 (considering whether letter gave false impression that it was from an attorney, such that

debtor would have felt more compelled to pay); *Gionis*, 238 F. App'x at 29 (considering whether least-sophisticated consumer "would be confused, and reasonably might feel pressured to immediately pay the debt, even if she disputed its validity, in order to avoid the possibility of having to also pay [the debt collector's] attorney fees at some later date"). Rather, the relevant language is, at least partially, the result of a litigation strategy designed with state-court judges in mind. Javitch freely admits that it adopted the "Complaint for Money Loaned" form of pleading in the hope that state trial judges would deem its credit-card-collection suits exempt from the requirement of Ohio Rule of Civil Procedure 10(D)(1), which normally applies to such suits. This rule states: "When any claim or defense is founded on an account or other written instrument, a copy of the account or written instrument must be attached to the pleading. If the account or written instrument is not attached, the reason for the omission must be stated in the pleading." Apparently, Javitch hopes that by styling its pleading as "for money loaned" rather than "on an account" and altering the language to make the action sound more like a suit for a traditional loan of money, it can avoid the burdens imposed by Rule 10(D)(1). While it seems unlikely that state trial judges will agree, given that the superficial change in wording does not change the substance of the suit, which remains a suit for credit-card debt founded both on an account and on a written instrument, Javitch may pursue this litigation strategy as long as it does not violate the FDCPA in the process.

**C.      The fact that the confusing language was not entirely intended to mislead debtors does not exempt it from the requirements of the FDCPA**

The fact that Javitch did not draft the confusing language with the debtor solely in mind does not change the fact the debtor who receives such a complaint may be confused by it and may suffer as a result. Nor does it negate the possibility that Javitch intended the confusing language to mislead the debtor. First, the least-sophisticated debtor might reasonably believe that the suit is for some kind of traditional loan of money. If the debtor has not taken out such a loan, or has taken out such a loan but has disposed of it in some way, she might ignore the suit, resulting in a default judgment (obviously a desirable outcome for Javitch). Second, if the debtor simply does not

understand from the document the debt to which it refers, she might be less likely to contest the suit, again making a default judgment more likely. *See also Muha*, 2009 WL 593135, at *5 ("Confusing language in a dunning letter can have an intimidating effect by making the recipient feel that he is in over his head and had better pay up rather than question the demand for payment."). Third, the debtor might be led to believe that the "money loaned" consisting of "the sum of $4,604.56" is a fixed amount that is not susceptible to the types of defenses a debtor can assert in an action for collection of credit-card debt, such as contested or improper charges, improper additions of fees after the debt has been charged off, or other violations of the lending agreement. *See Muha*, 2009 WL 593135, at *5 ("The intimidating effect may have been magnified by [language that] might have suggested to an unsophisticated consumer that any right he might have to challenge the demand for payment had been extinguished . . . ."). Finally, if the debtor is fooled into thinking this complaint is not for a credit-card debt, she might be less likely to demand that the court enforce Javitch's obligation to provide documentation of her credit-card account under Rule 10(D)(1).

Javitch could have drafted this complaint in a way that made the nature of the suit clear to the debtor, but, instead, the document is stated in confusing, unnatural language and contains several false statements about the financial relationships at issue. As the majority states, Congress wrote the FDCPA to be "extraordinarily broad," *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992), and to provide for strict liability. *See* 15 U.S.C. § 1692k(c). We are bound to analyze whether a debt-collector's practice is deceptive, not using our own common sense as experienced jurists, but using the least-sophisticated-consumer test, which is "designed to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Kistner*, 518 F.3d at 438. Unlike the majority, I view Javitch's complaint as one that a reasonable jury could find misleading to the least-sophisticated consumer. Therefore, I believe that "a jury should determine whether the [complaint] is deceptive and misleading." *Id.* at 441; *see also Muha*, 2009 WL 593135, at *5 ("The defendant's letter was not so palpably misleading as to entitle the plaintiffs to summary judgment, but neither was it so palpably not misleading as to entitle the defendant to summary judgment.").

Javitch may be able to prove that it did not intend the complaint to mislead Miller and that the confusing nature of the complaint was a bona fide error. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 538 F.3d 469, 478 (6th Cir. 2008) (holding that bona fide error defense in 15 U.S.C. § 1692k(c) applies to bona fide errors of law). Similarly, it may be able to prove that its false statements were unintentional and resulted either from careless drafting or a lack of understanding of the relevant concepts. However, given the pervasiveness of the confusing language in this document, I cannot say that Javitch has established its burden to such an extent that there is no genuine issue of material fact for a jury.

**D.        Conclusion**

For the foregoing reasons, I would reverse the grant of summary judgment and remand for trial.