HARRIS TRUST AND SAVINGS BANK, Plaintiff-Appellee, *v.* LONCIE D. MC-CRAY, Defendant-Appellant.

(No. 59855; 

First District (4th Division)—July 24, 1974.

Ron Fritsch, of Chicago, for appellant.

Chapman and Cutler, of Chicago (Michael W. Ford and Terry A. McIlroy, of counsel), for appellee.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

This action was filed in order to recover a judgment for an amount of money allegedly due on a credit card account. The defendant filed a motion to dismiss the complaint, and the trial court denied the motion. The only question presented in this appeal is whether a credit card issuer may commence an action based upon the holder's failure to pay for the purchase of goods more than 4 years after the issuer's cause of action accrued.

The facts are undisputed. Defendant made two purchases with a credit card issued to her by the plaintiff. On December 14, 1966, she purchased goods for $400, and on December 19, 1966, she purchased additional goods for $102.27. She made no other purchase and incurred no other debts, except for interest, through the use of the plaintiff's card.

Defendant made three payments on her account with plaintiff: $20 in April 1967; $39.98 in June 1967; and $35 in March of 1968. Finance charges of $58.30 were charged to the account from February to September 1967. The defendant's account was "charged off" plaintiff's books in September 1967, when the balance due was $500.59. Defendant's final payment of $35 was made after her account was "charged off."

On June 13, 1972, plaintiff filed a complaint against the defendant seeking a judgment for the balance of $465.59 plus $77.32 attorney fees, for a total of $542.91. On January 16, 1973, the defendant filed a motion to dismiss which asserted that plaintiff's claim was barred by the 4-year limitation in section 2—725 of the Uniform Commercial Code. (Ill. Rev. Stat. 1971, ch. 26, § 2—725.) Plaintiff filed a counter petition on March 27, 1973, objecting to defendant's motion to dismiss on the ground that its cause of action was not brought upon a contract for sale but rather a debtor-creditor relationship. On April 24, 1973, the Honorable Joseph A. Solan denied the defendant's motion to dismiss.

On November 8, 1973, the cause was tried without a jury before the Honorable George W. Kasserman, who found for the plaintiff. Judgment was entered against the defendant in the amount of $542.91 and costs. On November 30, 1973, the defendant filed this notice of appeal.

Defendant argues that, when she purchased merchandise with a credit card issued by plaintiff, she entered a "contract for the sale of goods."

She contends that plaintiff's cause of action is based upon a breach of this contract, which occurred when she failed to pay for the goods, and is thus governed by the 4-year limitation of section 2—725 of the Uniform Commercial Code. That section provides:

> "(1) An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it." Ill. Rev. Stat. 1971, ch. 26, § 2—725.

Plaintiff's position is that the credit card transaction involved herein created a debtor-creditor relationship. It argues that the cause of action could not have arisen from the failure to pay for the goods because the goods were paid for by the bank. Instead, plaintiff urges, the cause of action arose when the defendant failed to repay the bank for funds advanced on her behalf to the merchant where the goods were purchased. Therefore, plaintiff argues, the applicable statute of limitations is that dealing with written contracts, including promises to pay money, which provides:

> "Except as provided in Section 2—725 of the 'Uniform Commercial Code', enacted by the Seventy-second General Assembly, actions on bonds, promissory notes, bills of exchange, written leases, written contracts, or other evidences of indebtedness in writing, shall be commenced within 10 years next after the cause of action accrued; but if any payment or new promise to pay shall have been made, in writing, on any bond, note, bill, lease, contract, or other written evidence of indebtedness, within or after the period of 10 years, then an action may be commenced thereon at any time within 10 years after the time of such payment or promise to pay." Ill. Rev. Stat. 1971, ch. 83, § 17.

Before discussing the specific question raised in this appeal, we deem it advisable to consider briefly the nature of the transaction involved herein.

The bank credit card system involves a tripartite relationship between the issuer bank, the cardholder, and merchants participating in the system. The issuer bank establishes an account on behalf of the person to whom the card is issued, and the two parties enter into an agreement which governs their relationship. This agreement provides that the bank will pay for cardholder's account the amount of merchandise or services purchased through the use of the credit card and will also make cash loans available to the cardholder. It also states that the cardholder shall be liable to the bank for advances and payments made by the bank and that the cardholder's obligation to pay the bank shall not be affected

or impaired by any dispute, claim or demand by the cardholder with respect to any merchandise or service purchased.

The merchants participating in the system agree to honor the bank's credit cards. The bank irrevocably agrees to honor and pay the sales slips presented by the merchant if the merchant performs his undertakings, such as checking the list of revoked cards before accepting the card. The sales slips signed by the cardholder at the time of the purchase contain the following undertaking by the cardholder:

> "I hereby authorize the Issuer of the Midwest Bank Card imprinted above to pay the amount shown as Total hereon upon presentation hereof to Issuer by a bank which is a member of the Midwest Bank Card system. I hereby promise to pay said Issuer the amount shown as Total hereon (together with other charges due thereon, if any) subject to and in accordance with the terms of the cardholder agreement governing the use of Issuer's Midwest Bank Cards."

These slips are forwarded to the member bank which originally issued the card. The cardholder receives a statement from the bank periodically and may then decide whether to make payment to the bank in full within a specified period, free of interest, or to defer payment and ultimately incur an interest charge.

Defendant contends that the foregoing transaction does not establish a debtor-creditor relationship between the issuer bank and the cardholder. She points out that no money was in fact loaned in this transaction, even though the agreement provides for cash advances. Defendant concedes that money advanced to her would be a loan, but she contends that money paid directly to merchants constitutes a sales contract for the purchase of goods.

We believe that money advanced to a merchant in payment for merchandise received by the defendant constitutes a loan. The defendant promised to repay the bank for money it paid to the merchant for her benefit. The credit card allowed defendant to make use of the resources of the issuer bank, and the merchant is in the same financial position as if he were receiving cash from the bank at a small discount for its service. Under this arrangement, the bank assumed the risk that the cardholder would not pay the debt and has no recourse against the merchant.

Defendant argues that the terms of the cardholder agreement itself recognize a difference between a cash advance made directly to the cardholder and payment for merchandise purchased through the use of the credit card. Thus, she urges, we should consider the former a loan and the latter an assignment of a retail installment sales contract from the merchant to the bank.

Plaintiff contends that it is not possible to read into this distinction the conclusion that the direct advance creates a loan and the indirect advance is the acceptance of an assignment of a retail installment sales contract. It urges, to the contrary, that the distinction is merely for the purpose of reflecting the different methods involved in disbursing these loans and computing the amounts necessary to repay them.

Defendant's argument is belied by the definition of a retail installment sales contract in effect at the time the transactions in question occurred in 1966. Although the act expired the following year, it is interesting to note that it stated:

> " 'Retail installment contract' or 'contract' means and includes any agreement, negotiated or entered into in this state, including a chattel mortgage, conditional sale contract, or any other form of instrument evidencing an agreement to purchase goods for delivery to a person residing in the State of Illinois, other than for a commercial or business use of for the purpose of resale, by payment of the purchase price in two or more installments over a period of time and pursuant to which title to, or a lien upon the goods, which are the subject matter of the sale, is retained or taken by the seller as security, in whole or in part, for the buyer's obligation." Ill. Rev. Stat. 1965, ch. 121½, § 223.

Title to the goods in the case at bar unquestionably passed to defendant when she signed the sales slip and took possession of them, no lien was retained thereon, and the payment of the purchase price did not involve two or more installments. Thus, the statutory definition of a retail installment sales contract in effect at the time of the transaction in question clearly did not include the tripartite agreement involved here.

We are not persuaded to reach a contrary conclusion by the two cases defendant cites in support of her argument. She relies upon *Johnson v. Sears Roebuck & Co.* (1973), 14 Ill.App.3d 838, 303 N.E.2d 627, as authority for the proposition that Illinois courts have rejected the notion that a credit card account is in substance a loan of money. However, *Johnson* involved a department store credit card, used solely for credit purposes, in which there were only two parties, the store and the customer. Here, there was a tripartite relationship in which the bank paid merchants for goods purchased by the cardholder, and the defendant agreed to repay the bank rather than the merchant. Thus, in our opinion, *Johnson* is not authority for defendant's contention that a three-party bank-charge-card transaction is in substance a loan of money.

Defendant also cites *Berry v. G. D. Searle & Co.* (1974), 56 Ill.2d 548, 309 N.E.2d 550, wherein the Supreme Court of Illinois held that § 2-725

of the Uniform Commercial Code is applicable to the sale of birth-control pills. We do not believe that *Searle* is applicable here because the relationship between the defendant and the bank was that of debtor-creditor.

In view of the foregoing, we conclude that the payments made by the plaintiff to the merchants pursuant to the cardholder agreement constituted a loan of money. Thus, plaintiff's cause of action was governed by the 10-year limitation applicable to written contracts, including promises to pay money. It was not barred by the expiration of the 4-year statute of limitations governing contracts for the sale of goods.

Affirmed.

ADESKO, P. J., and DIERINGER, J., concur.