**Jason SMITHER, Appellant,**

v.

**ASSET ACCEPTANCE, LLC, Appellee.**

No. 55A04–0902–CV–70.

Court of Appeals of Indiana.

Jan. 12, 2010.

Asset Acceptance, LLC ("Asset"). We reverse and remand.

### Issue

Although Smither has raised a number of issues, the primary and dispositive issue in this case is whether the applicable statute of limitations barred Asset's action against him.

### Facts

In 1999, Smither obtained a Mastercard credit card from Providian Bank. By February 2000, Smither owed over $1700.00 on the card. He made a payment on the account of $271.00 on February 9, 2000, and thereafter never made another payment. On September 18, 2000, Providian "charge[d] off" Smither's account. Appellant's App. p. 75. However, it continued sending monthly billing statements to Smither through December 2000. This final bill reflected an outstanding balance of $2152.67, and requested a minimum payment of $670.00.

The Providian Mastercard Account Agreement that Asset contends governs Smither's account states in part, "You will be in default: ... if you fail to pay any amount due to us or to any other creditor...." *Id.* at 108. It further states, "On your default, we may, without further demand or notice, cancel your credit privileges, declare your Credit Card Account balance immediately due and payable, and invoke any remedy we may have." *Id.* at 109. It also states, "No matter where you live, this Agreement and your Credit Card Account are governed by federal law and by New Hampshire law." *Id.*

On December 17, 2001, Asset purchased Smither's account from Providian. On May 30, 2006, Asset filed suit against Smither, seeking damages of $2152.67 plus interest. It twice attempted service at an incorrect address for Smither, resulting in the summonses being returned undeliv-

Jason Smither, Mooresville, IN, Appellant pro se.

Charlie Gordon, Janell Duncan, Greene & Cooper, LLP, Louisville, KY, Attorneys for Appellee.

### OPINION

BARNES, Judge.

#### Case Summary

Jason Smither appeals the trial court's grant of summary judgment in favor of

ered and, thus, Smither not responding to the complaint. On July 28, 2006, the trial court entered default judgment against Smither in the amount of $2152.67 plus attorney fees, interest, and costs.

On November 16, 2006, Asset initiated proceedings supplemental to recover the judgment. However, on October 18, 2007, the trial court ordered that the case be closed for Asset's failure to prosecute, "subject to being redocketed should further action be necessary at a later time." *Id.* at 23.

In November 2007, Smither reviewed a credit report and discovered the default judgment against him. He immediately wrote a letter to the trial court disputing the judgment, and on January 8, 2008, the trial court conducted a hearing and set aside the default judgment. Smither subsequently filed a timely answer to Asset's complaint, in which among other things he asserted that Asset's lawsuit was barred by the applicable statute of limitations.

On April 7, 2008, Asset moved for summary judgment. For some reason, the trial court originally granted the motion the next day, but it later vacated this order. The trial court then held a hearing on the motion on June 27, 2008, at which time the trial court took the matter under advisement and gave Asset ten additional days to respond to an earlier discovery order. On July 28, 2008, Smither filed a motion to dismiss; on September 9, 2008, Smither also filed his own motion for summary judgment. The trial court conducted a second hearing on November 14, 2008. Finally, on December 15, 2008, the trial

court entered summary judgment in favor of Asset in the amount of $2152.67 plus interest and costs. Smither filed a motion to correct error, which the trial court denied on December 30, 2008. He now appeals pro se.

### Analysis

■ We review a grant of summary judgment to determine whether there are genuine issues of material fact, and whether the moving party is entitled to judgment as a matter of law. *Yates v. Johnson County Bd. of Comm'rs,* 888 N.E.2d 842, 846 (Ind.Ct.App.2008). We must construe all evidence in favor of the party opposing summary judgment, and all doubts as to the existence of a material issue must be resolved against the moving party. *Id.* at 847. We carefully review a grant of summary judgment in order to ensure that a party was not improperly denied his or her day in court. *Reeder v. Harper,* 788 N.E.2d 1236, 1240 (Ind.2003).[1]

■ We note Smither's contention that Asset failed to introduce an account agreement that actually governed his Providian Mastercard account. He notes that Asset has introduced three different account agreements during the course of these proceedings. The first two indicated that they were for Providian Visa accounts, not Mastercard. Thus, these agreements clearly do not control here. The third agreement, while stating that it applied to Providian Visa *and* Mastercard accounts, also stated that the account it governed had a current interest rate of 23.99%, while Smither's statements indicate that his account had an interest rate of 19.80%.

1. Before turning to the statute of limitations issue, we first address Smither's contention that the trial court erred in permitting Asset to continue prosecuting this action after the trial court involuntarily dismissed its proceedings supplemental action pursuant to Indiana Trial Rule 41(E) because of Asset's apparent failure to prosecute. We note that "proceed-

ings supplemental are merely extensions of the underlying action, not separate and independent actions." *State Farm Mut. Auto. Ins. Co. v. Estep,* 873 N.E.2d 1021, 1029 (Ind. 2007). Thus, it is clear that dismissal of Asset's proceedings supplemental action did not affect the underlying lawsuit or constitute a dismissal of that action.

■ It is axiomatic that in order to recover for a breach of contract, a plaintiff must prove (1) a contract existed, (2) the defendant breached the contract, and (3) the plaintiff suffered damage as a result of the defendant's breach. *Collins v. McKinney*, 871 N.E.2d 363, 370 (Ind.Ct.App. 2007). A plaintiff's burden to prove the existence of a contract also includes the burden of proving the terms of that contract. Although Smither does not dispute that a contract of some kind existed between him and Providian, it is Asset's burden in this action to prove the terms of that contract. It is troubling that Asset has not submitted conclusive proof that the Providian Mastercard agreement Asset submitted controlled Smither's account.

Nonetheless, we observe that all three of the account agreements Asset has provided contain identical language relevant to this case, namely, the provisions regarding default and acceleration. It is possible that this standard "boilerplate" language was contained in all Providian credit card agreements. Thus, we will decide the statute of limitations issue in this case based upon the account agreement that states that it applies to Providian Mastercard accounts.

■ We also acknowledge a novel argument that Smither raises in his appellate brief. Namely, he contends Asset was at the very least negligent in first directing the summonses for the complaint to an old address, when it should have had knowledge of his current address.[2] By the time Smither obtained actual knowledge of the lawsuit and subsequent default judgment in November 2007, there is no question that the statute of limitations for this lawsuit had passed. Indiana Trial Rule 3 requires that in order for a complaint to be deemed filed for statute of limitations purposes, the plaintiff in cases where service of process is required must furnish "to the clerk as many copies of the complaint and summons as are necessary." *Ray–Hayes v. Heinamann*, 760 N.E.2d 172, 174–75 (Ind.2002) (quoting Ind. Trial Rule 3).

■ Smither essentially contends that by being negligent in addressing the summonses, Asset's filing of the complaint in May 2006 did not stop the running of the statute of limitations. In reviewing the record, however, we see no indication that Smither made this argument before the trial court. Among other things, this means Asset had no opportunity to provide an explanation for why it addressed the summonses as it did. "[A] party may not change its theory on appeal and argue an issue that was not properly presented to the trial court." *Pardue v. Smith*, 875 N.E.2d 285, 289–90 (Ind.Ct.App.2007). This bar also applies "to a similar, yet distinct issue that was properly pled before the trial court." *Id.* at 290. Thus, we will not address this argument further.

We also address Smither's contention that the New Hampshire statute of limitations applies to this case. The Providian Mastercard agreement specified, "No matter where you live, this Agreement and your Credit Card Account are governed by federal law and by New Hampshire law." Appellant's App. p. 109. Asset concedes that New Hampshire has a three-year statute of limitations that would govern this case, and that its action clearly would be time barred under that statute. *See* N.H.Rev.Stat. Ann. § 508:4.

■ It is well-settled, however, that contractual choice of law provisions govern only the substantive law of any claims arising out of the contract; the law of the

---

**2.** According to Smither, he had not lived at the incorrect address since 1996. His Providian credit card statements from 2000 were sent to an address in Mooresville where he was still living in 2006.

forum state where the suit is filed still governs procedure. *See Homer v. Guzulaitis,* 567 N.E.2d 153, 156 (Ind.Ct.App. 1991), *trans. denied.* A statute of limitation is a procedural constraint on when suit may be filed. *See Kissel v. Rosenbaum,* 579 N.E.2d 1322, 1326–27 (Ind.Ct. App.1991). Additionally, "the prevailing authority indicates that, unless the parties expressly agree to apply the statute of limitations of another state, general choice of law provisions in contracts incorporate only substantive law and do not displace the procedural law of the forum state." *Western Video Collectors, L.P. v. Mercantile Bank of Kansas,* 23 Kan.App.2d 703, 935 P.2d 237, 239 (1997). Thus, Indiana law, not New Hampshire law, provides the appropriate statute of limitations time period here.

■ The parties proceed upon the assumption that the proper statute of limitations in this case is Indiana Code Section 34–11–2–9, which provides in part, "An action upon promissory notes, bills of exchange, or other written contracts for the payment of money executed after August 31, 1982, must be commenced within six (6) years after the cause of action accrues." We are not convinced, however, that this statute of limitations applies to attempts to collect credit card debt. Instead, the more appropriate statute appears to be Indiana Code Section 34–11–2–7(1), which governs "[a]ctions on accounts and contracts not in writing." Although this statute also contains a six-year limitations period, labeling Smither's debt as one related to an "account" or unwritten contract as opposed to a written contract for the payment of mon-

ey affects the commencement of the running of the statute of limitations.[3]

The Illinois Appellate Court recently addressed whether an action to collect credit card debt was governed by that state's statute of limitations for "actions on unwritten contracts," or the statute of limitations for "actions on bonds, promissory notes, bills of exchange, written leases, written contracts, or other evidences of indebtedness in writing. . . ." *Portfolio Acquisitions, LLC v. Feltman,* 391 Ill.App.3d 642, 330 Ill.Dec. 854, 909 N.E.2d 876, 881 (2009). The *Feltman* court began by noting the nature of credit card transactions. Essentially, when a consumer uses a bank-issued credit card to make a purchase, the bank pays the merchant on behalf of the consumer, and that amount is treated as a loan by the bank to the consumer, with repayment contractually governed by the terms of the credit card agreement. *See Feltman,* 330 Ill.Dec. 854, 909 N.E.2d at 881 (citing *Harris Trust & Sav. Bank v. McCray,* 21 Ill.App.3d 605, 316 N.E.2d 209, 211 (1974)). The issuance of a credit card and accompanying cardholder agreement "is a standing offer to extend credit that may be revoked at any time." *Id.* Additionally, "each time the credit card is used, a separate contract is formed between the cardholder and bank." *Id.*

With this background, the *Feltman* court concluded that the statute of limitations for unwritten contracts governed credit card accounts. It noted that a written credit card application and/or generic terms of agreement do not by themselves establish the existence of a contract; the contract creating indebtedness is formed only when the customer accepts the bank's

---

**3.** We would be remiss in not observing that the Providian Mastercard agreement states in part, "You [debtor] waive: . . . any applicable statute of limitations. . . ." Appellant's App. p. 109. Asset has never made any argument, before the trial court or this court, that this provision is valid and enforceable. In the absence of such argument, we will not assume that it is, particularly given that there are differing views on the enforceability of such provisions. *See* 51 Am.Jur.2d *Limitation of Actions* § 376 (2000).

offer of credit by using the card. *See id.,* 330 Ill.Dec. 854, 909 N.E.2d at 883. The court also observed that many credit card transactions are purely electronic and do not require any kind of physical writing to consummate. *See id.,* 330 Ill.Dec. 854, 909 N.E.2d at 884. Furthermore, credit card account statements are merely demands for payment based on the alleged prior use of the card that may be disputed by the debtor; by themselves, statements are not complete agreements or considered written contracts. *See id.,* 330 Ill.Dec. 854, 909 N.E.2d at 885–86.

*Feltman* is highly instructive. It establishes that credit card accounts are unlike promissory notes or installments loans, such as mortgages, student loans, and car loans. In those types of written debt obligations, the total amount of indebtedness and a defined schedule of repayment, including precise dates for payment and the amount of each payment until the debt is fully repaid, typically are included in the loan document from the outset. With a credit card, although a credit limit may be established, the precise amount of debt that a consumer may undertake is unknown at the outset and fluctuates, depending on how the card is used. Instead, the creditor sends monthly statements to the debtor indicating the amount of that month's required minimum payment, which may vary depending upon how much the card has been used, whether the creditor has imposed fees of different kinds, whether the interest rate for the card is variable, and how previous payments have been made.[4] Long-standing Indiana law also holds, " 'The mere existence of any written document associated with a cause of action does not enable a claimant to avoid [the] statute of limitations for unwritten contracts [and actions on account].

The written document must in fact be the basis for the claim being pressed.' " *McMahan v. Snap on Tool Corp.,* 478 N.E.2d 116, 123 (Ind.Ct.App.1985) (quoting *In re Widau,* 177 Ind.App. 215, 222, 378 N.E.2d 936, 940 (1978)); *see also Falmouth & Lewisville Turnpike Co. v. Shawhan,* 107 Ind. 47, 48, 5 N.E. 408, 409 (1886) (holding that statute of limitations governing unwritten contract applies where contract is partially in writing and partially based on parol evidence).

With *Feltman's* observations and our own, we note that credit card accounts would appear to closely resemble the common law definition of an "open account."

> An "open account" is an account with a balance which has not been ascertained and is kept open in anticipation of future transactions. An open account results where the parties intend that the individual transactions in the account be considered as a connected series, rather than as independent of each other, subject to a shifting balance as additional debits and credits are made, until one of the parties wishes to settle and close the account, and where there is but one single and indivisible liability arising from such series of related and reciprocal debits and credits. This single liability is fixed at the time of settlement, or following the last entry in the account, and such liability must be mutually agreed upon between the parties, or impliedly imposed upon them by law. *Thus, an open account is similar to a line of credit.*

**Observation:** Openness of an account, for purposes of an action on an open account, is indicated when further dealings between the parties are contemplat-

---

4. Also complicating matters is the fact that Asset is not the original creditor; proving that Asset is a proper successor to Providian also requires evidence outside the original dealings between Providian and Smither. *See Feltman,* 330 Ill.Dec. 854, 909 N.E.2d at 886.

ed and when some term or terms of the contract are left open and undetermined. The continuity of an account is broken where there has been a change in the relationship between the parties, or where the account has been allowed to become dormant.

1 Am.Jur.2d *Accounts & Accounting* § 4 (2005) (emphasis added) (footnotes omitted). This definition encompasses credit card agreements: the precise amount of indebtedness that a customer may incur is unknown and fluctuating and the account is kept open in anticipation of future transactions, unless one of the parties decides to close it. *See also Nelson v. Board of Comm'rs of Posey County,* 105 Ind. 287, 288, 4 N.E. 703, 704 (1886) ("The primary idea of 'account' is some matter of debit and credit, or of a demand in the nature of debit and credit between parties, arising out of contract, or of a fiduciary relation, or some duty imposed by law.").

■ Thus, we will treat Smither's debt as an open account debt for statute of limitations purposes. The general rule is that the statute of limitations for an action on an open account "commences from the date the account is due." 1 Am.Jur.2d *Accounts & Accounting* § 22 (2005). It is also clear that when the last activity on an open account, such as the charging of an item or the making of a payment on the account, has occurred beyond the statutory limitations period, any action as to the entire balance of the account or any part of the balance is time-barred. *See Hawkins v. Barnes,* 661 So.2d 1271, 1272–73 (Fla.Ct.App.1995). There is no indication in case law or other authorities that a creditor can indefinitely postpone the commencement of the statute of limitations by continuing to send additional statements demanding payment after the first demand has gone unpaid.

■ Here, the statements in the record indicate that Smither last made a payment on the account on February 9, 2000, and thereafter Providian requested a minimum payment of $45.00 on the account due March 11, 2000. Smither never made that payment, nor any other, and made no additional charges to the account. Whether we consider the statute of limitations to have begun running on the date of Smither's last payment or the next payment due date thereafter, Asset's lawsuit filed on May 30, 2006, was more than six years after both dates.

■ Asset contends that it essentially was entitled to delay the running of the statute of limitations because the credit card agreement governing Smither's account contained an optional acceleration clause. Asset further argues that Providian exercised this option in September 2000, when it "charge[d] off" Smither's account. Appellant's App. p. 75. It is true that if an installment loan contract or promissory note has an optional acceleration clause, by which a creditor may (but is not required) to declare all future installments on the loan immediately due and payable after a debtor's default, the statute of limitations to collect the entire debt does not begin to run immediately upon the debtor's default, but only when the creditor exercises the optional acceleration clause. *See Griese–Traylor Corp. v. Lemmons,* 424 N.E.2d 173, 183 (Ind.Ct.App. 1981).

■ Having already concluded that a credit card account is more akin to an open account or unwritten contract than a promissory note or installment loan contract, it is not clear to us that we ought to incorporate the law regarding optional acceleration clauses into this case. Nonetheless, even if we were to assume that a credit card company could delay the running of the statute of limitations by waiting to invoke an optional acceleration clause, the simple fact here is that Providian nev-

er invoked it. Asset provides us with no authority equating a debt "charge off" with the exercise of an optional acceleration clause, nor have we discovered any in our own research. In fact, we cannot conclude that they are equivalent. A "charge off" is defined generally as "[t]o treat (an account receivable) as a loss or expense because payment is unlikely; to treat as a bad debt." Black's Law Dictionary p. 227 (7th ed.1999). Under this definition, a "charge off" appears to be an accounting device that has no bearing upon the question of whether an optional acceleration clause has been invoked.

■ On the other hand, as indicated both by case law and the express language of the Providian Mastercard agreement, an acceleration requires a declaration that the full amount of the existing debt is immediately due and payable, thus revoking an earlier agreement to pay the debt gradually over time. One federal court has stated as follows:

> The general rule is that "where the acceleration of the installment payments in cases of default is optional . . . , then *the entire debt does not become due on the mere default of payment* but affirmative action by the creditor must be taken to make it known to the debtor that he has exercised his option to accelerate. . . ." However, "a party is not at liberty to stave off operation of the statute [of limitations] inordinately by failing to make demand." In such cases, "when statutorily unstipulated, the time for demand is ordinarily a reasonable time . . . [and] a matter of the parties' expectations. . . ."

*Curry v. U.S. Small Bus. Admin.*, 679 F.Supp. 966, 969–70 (N.D.Cal.1987) (citations omitted). Other courts have noted that in some instances, the exercising of an optional acceleration clause may be implied from the creditor's conduct, but "a court will rarely imply acceleration from [such] conduct." *American State Bank and Trust Co. of Williston v. Sorenson*, 539 N.W.2d 59, 63 (N.D.1995). "Some action is required by which the creditor *affirmatively and unequivocally makes known to the debtor* his intention to declare the whole debt due." *H.C. Clark Implement Co., Inc. v. Wiedmer*, 389 N.W.2d 816, 817 (S.D.1986) (emphasis added).

Here, even if Providian internally believed it was invoking the optional acceleration clause when it "charged off" Smither's debt, it never took any "affirmative action" to notify Smither of that fact. Such notification plainly is a requirement for invoking an optional acceleration clause. Indeed, for several months after Providian "charged off" Smither's debt and supposedly invoked the optional acceleration clause, it continued sending him monthly statements requesting minimum payment(s) of considerably less than the full amount of his indebtedness. The final bill in the record, sent in December 2000, requested a minimum payment of $670.00 on a total balance of $2152.67. This request is fatally inconsistent with Asset's contention that Providian had already invoked the optional acceleration clause in September 2000. We conclude that Providian's September 2000 "charge off" of Smither's debt was not the same as exercising its rights under the optional acceleration clause.

■ In fact, the first instance in the record upon which either Asset or Providian requested immediate and full payment of Smither's outstanding indebtedness was when Asset filed this suit in May 2006. By that time, Smither had been in default on his account for over six years. Clearly, waiting until after the statute of limitations has passed following default before making

demand for full and immediate payment of a debt is per se an "unreasonable" amount of time to invoke an optional acceleration clause and cannot be given effect.[5] *See Newsom v. Board of Comm'rs*, 103 Ind. 526, 530, 3 N.E. 163, 165 (1885) (holding that parties cannot avoid the running of the statute of limitations by waiting until after the limitations period has passed before demanding payment).

Viewing Smither's credit card account as an open account, Providian and its successor Asset had, at the very latest, six years from March 11, 2000, to file suit against Smither seeking collection of any part the debt he incurred. Even if we were to assume Providian could have invoked the optional acceleration clause at a later date and thereby delay the running of the statute of limitations, it never did so. Thus, Asset's lawsuit filed on May 30, 2006, is completely time-barred.

We observe that, although this is an appeal from the grant of Asset's motion for summary judgment, "When any party has moved for summary judgment, the court may grant summary judgment for any other party upon the issues raised by the motion...." Ind. Trial Rule 56(B). It is clear not only that the grant of summary judgment in favor of Asset must be reversed, but also that Smither is entitled to summary judgment on remand because of our resolution of the statute of limitations issue.

### Conclusion

Asset's claim to any portion of Smither's Providian credit card balance is barred by the statute of limitations. We reverse the grant of summary judgment in favor of Asset and remand for the trial court to enter summary judgment in favor of Smither.

Reversed and remanded.

NAJAM, J., and KIRSCH, J., concur.

---

**5.** We need not decide whether a shorter period of time also could be unreasonable under the facts and circumstances of a different case.