Kennedy, J.,
concurring.
{¶ 109} I agree with most of the opinion of Justice Pfeifer; however, I do not join ¶ 49 through 59. While I agree with the ultimate conclusion that the action brought against Sandra Taylor Jarvis was untimely, I disagree with the analysis regarding when the cause of action against her accrued, including the opinion’s discussion of Ohio’s borrowing statute. Because a credit-card account is an account founded upon contract, with a single and indivisible liability arising from individual transactions that are connected as a series, the issue of when the cause of action accrued is resolved by case law regarding an action on an account. The statute of limitations for an action on an account begins to run on the date of the last item appearing on the account. Applying these principles to the facts before us, I would hold that the cause of action accrued on June 28, 2006, the date Taylor Jarvis made her last payment on the credit-card account.
{¶ 110} The opinion of Justice Pfeifer reasons that when a credit-card debtor fails to make an agreed-to monthly minimum payment when it becomes due and owing, a cause of action accrues for statute-of-limitations purposes. Opinion at ¶ 50, citing Dudek v. Thomas & Thomas Attorneys & Counselors at Law, L.L.C., 702 F.Supp.2d 826, 889 (N.D.Ohio 2010); Citibank, N.A. v. Hyslop, 10th Dist. Franklin No. 12AP-885, 2014-Ohio-844, 2014 WL 890942, ¶ 16-17; Discover Bank v. Heinz, 10th Dist. Franklin No. 08AP-1001, 2009-Ohio-2850, 2009 WL 1682004, ¶ 17; Discover Bank v. Poling, 10th Dist. Franklin No. 04AP-1117, 2005-Ohio-1543, 2005 WL 737404, ¶ 18. However, none of the cases relied upon by the opinion engaged in any analysis on the issue of accrual, and none of them concluded that the due date of the first missed monthly minimum payment is the date on which a cause of action accrues.
*660 {¶ 111} In Dudek, there was no dispute as to the date that the creditor’s breach-of-contract claim accrued against the debtor. Id. at 839. The court accepted the undisputed date and did not engage in any independent analysis to resolve the issue of when the cause of action accrued. Id.
(¶ 112} Hyslop is also devoid of any discussion of when the cause of action accrued. Instead, the Hyslop court noted that the credit-card-account billing statements in evidence reflected activity beginning September 30, 2009, and continuing through September 5, 2011. Id. at ¶ 12. An employee of the bank had stated in an affidavit that the debtor was in default for his failure to make “proper payments” on the account. Id. at ¶ 13. The appellate court did not address any issue regarding the statute of limitations and agreed with the trial court that the bank had established that the debtor had failed to make required payments and that the account was in default. Id. at ¶ 16-20.
{¶ 113} The analysis in Poling focused on whether the bank had proved a breach-of-contract claim for the debtor’s alleged failure to make payments on a credit-card account. Poling, 2005-Ohio-1543, 2005 WL 737404, at ¶ 17. The court concluded that the bank had established a breach of contract, and the court stated that the “defendant repeatedly failed to make the minimum monthly payment due on the account, and, therefore, was in default.” Id. at ¶ 18. The court never discussed the accrual date for the cause of action.
{¶ 114} In Heinz, no issue was raised regarding the date that the cause of action accrued. The court noted that after applying for and receiving the credit card, the debtor made a balance transfer, purchased some goods and services with the card, and “made payments on the account until November 2007, when she sent a letter to [the creditor] contending she was not required to pay any amounts due on the account.” Heinz, 2009-Ohio-2850, 2009 WL 1682004, at ¶ 4. In concluding that the debtor had failed to demonstrate a meritorious defense to the creditor’s breach-of-contract claim, the Heinz court noted that after November 2007, the debtor “failed to make any required minimum monthly payments due on her * * * card account and therefore was in ‘default.’ ” Id. at ¶ 17.
{¶ 115} The facts currently before this court are also different from the underlying facts in Dudek, Hyslop, Heinz, and Poling. While Taylor Jarvis failed to make the scheduled minimum monthly payment due in January 2005, Chase did not inform her that it had suspended her charging privileges until it sent her the billing statement for the payment due on May 2, 2005. Taylor Jarvis also continued to make a number of less-than-minimum monthly payments until June 28, 2006. There are no indications in any of the aforementioned cases that the creditors had continued to extend credit after the debtors had failed to make less-than-minimum monthly payments or that the debtors made less-than-minimum payments on the accounts that were accepted by the creditors after the *661 debtors had failed to make a minimum payment due. Based upon these factual differences and the lack of a discussion of the date the cause of action accrued in any of the cases cited by Justice Pfeifer, the cases relied upon in his opinion are unavailing.
{¶ 116} Rather, case law pertaining to an action on an account guides the determination of when the cause of action accrues for statute-of-limitations purposes. An action on an account is founded upon contract, Arthur v. Parenteau, 102 Ohio App.3d 302, 304, 657 N.E.2d 284 (3d Dist.1995), and “is appropriate where the parties have conducted a series of transactions for which a balance remains to be paid,” Blanchester Lumber & Supply, Inc. v. Coleman, 69 Ohio App.3d 263, 265, 590 N.E.2d 770 (12th Dist.1990). Courts in Ohio recognize a creditor’s ability to pursue an action on an account for a cardholder’s default on a credit-card account. See Ohio Receivables, L.L.C. v. Dallariva, 10th Dist. Franklin No. 11AP-951, 2012-Ohio-3165, 2012 WL 2859923, ¶ 30-34; Citibank, N.A. v. Eckmeyer, 11th Dist. Portage No. 2008-P-0069, 2009-Ohio-2435, 2009 WL 1452614, ¶ 15. Further, the General Assembly has defined “account” to include “a right to payment of a monetary obligation, whether or not earned by performance, * * * arising out of the use of a credit or charge card or information contained on or for use with the card.” R.C. 1309.102(A)(2)(a)(vii).
{¶ 117} An Indiana court of appeals engaged in a thorough analysis of a credit-card account that is instructive here. Smither v. Asset Acceptance, L.L.C., 919 N.E.2d 1153, 1160 (Ind.App.2010). The Smither court distinguished credit-card accounts from promissory notes and installment loans, which have a “total amount of indebtedness and a defined schedule of repayment, including precise dates for payment and the amount of each payment until the debt is fully repaid, typically * * * included in the loan document from the outset.” Id. at 1159. In contrast,
the precise amount of debt that a consumer may undertake [on a credit-card account] is unknown at the outset and fluctuates, depending on how the card is used. * * * [T]he creditor sends monthly statements to the debtor indicating the amount of that month’s required minimum payment, which may vary depending upon how much the card has been used, whether the creditor has imposed fees of different kinds, whether the interest rate for the card is variable, and how previous payments have been made.

Id.

{¶ 118} The Smither court concluded that a credit-card account is analogous to an “open account,” which
*662 “results where the parties intend that the individual transactions in the account be considered as a connected series, rather than as independent of each other, subject to a shifting balance as additional debits and credits are made, until one of the parties wishes to settle and close the account, and where there is but one single and indivisible liability arising from such series of related and reciprocal debits and credits.”
(Footnotes omitted.) Id., quoting 1 American Jurisprudence 2d, Accounts and Accounting, Section 4, at 623-624 (2005).
{¶ 119} The Smither court held that a credit-card debt is “an open account debt for statute of limitations purposes.” 919 N.E.2d at 1160. It determined that the statute of limitations for such an account begins to run on the date of the last activity on the account. Id. (“Whether we consider the statute of limitations to have begun running on the date of Smither’s last payment or the next payment due date thereafter, Asset’s lawsuit filed on May 30, 2006, was more than six years after both dates”).
{¶ 120} Turning to the current case, the last activity on the account was a $50 payment by Taylor Jarvis on June 28, 2006, which qualifies as the last item on the account. Taylor Jarvis tendered the payment, and Chase accepted it, with the understanding that Chase would apply the payment to adjust the balance due on the account. Therefore, I would find that the cause of action against Taylor Jarvis accrued, and the statute of limitations began to run, on June 28, 2006. Thus, the cause of action accrued after April 7, 2005, the effective date of the borrowing statute, R.C. 2305.03(B), and that statute applies in the circumstances here, meaning that Delaware’s statute of limitations controls and that the suit against Taylor Jarvis was untimely. It is therefore not necessary to determine, as the opinion of Justice Pfeifer does, whether R.C. 2305.03(B) applies to causes of action that accrued but were not commenced before its effective date.
{¶ 121} Even if the analysis focusing on Taylor Jarvis’s last payment on the account is rejected, the opinion’s conclusion that the cause of action accrued when Taylor Jarvis failed to make a minimum monthly payment is problematic. Chase obviously did not conclude that this failure rendered the parties’ credit relationship irreparable. Instead, Chase continued to extend charging privileges to Taylor Jarvis. It was not until Chase terminated Taylor Jarvis’s charging privileges that the credit relationship between the parties came to end. The First District Court of Appeal of California has concluded that the relevant date for determining when a cause of action accrues for statute-of-limitations purposes on an open account is “the date the debt becomes settled; i.e., the date the relationship between the parties has come to an end other than for purposes of *663 paying amounts due or past due.” R.N.C., Inc. v. Tsegeletos, 231 Cal.App.3d 967, 975, 283 CaL.Rptr. 48 (1991). Applying this alternative analysis, the cause of action against Taylor Jarvis accrued, and the statute of limitations began to run, at the very earliest on April 8, 2005, the day after the last day of the billing cycle that closed before Chase terminated Taylor Jarvis’s charging privileges. As such, the borrowing statute applies under this analysis as well, Delaware’s statute of limitations controls, and the suit against Taylor Jarvis was untimely. And, again, it is therefore not necessary to determine whether R.C. 2305.03(B) applies to causes of action that accrued but were not commenced before its effective date.
{¶ 122} Accordingly, I respectfully concur.
O’Donnell, J., concurs in the foregoing opinion.