IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**MERTOLA, LLC,**
*Plaintiff/Apellant,*

*v.*

**ALBERTO J. SANTOS, ET AL.,**
*Defendants/Appellees.*

No. CV-17-0109-PR
Filed July 27, 2018

Appeal from the Superior Court in Maricopa County
The Honorable Aimee L. Anderson, Judge
No. CV2014-051213
**AFFIRMED**

Opinion of the Court of Appeals, Division One
241 Ariz. 572 (App. 2017)
**VACATED**

COUNSEL:

James R. Vaughan (argued), Brian K. Partridge, Law Office of James R. Vaughan, P.C., Scottsdale, Attorneys for Mertola, LLC

Beth K. Findsen, Law Offices of Beth K. Findsen, Scottsdale; Veronika Fabian (argued), Hyung S. Choi, Choi & Fabian, PLC, Chandler, Attorneys for Alberto Santos and Arlene Santos

Susan Mary Rotkis, Consumer Litigation Associates West, PLLC, Tucson, Attorneys for Amicus Curiae Arizona Chapter of the National Association of Consumer Advocates

Ellen Sue Katz, Lisa Moore, William E. Morris Institute for Justice, Phoenix, Attorneys for Amicus Curiae Community Legal Services, Southern Arizona Legal Aid and the William E. Morris Institute for Justice

Gary J. Cohen, Mesch Clark Rothschild, Tucson, Attorneys for Amicus Curiae The National Creditor Bar Association and the Arizona Creditor Bar Association

———————

JUSTICE BRUTINEL authored the opinion of the Court, in which CHIEF JUSTICE BALES, VICE CHIEF JUSTICE PELANDER, and JUSTICES TIMMER, BOLICK, GOULD and LOPEZ joined.

———————

JUSTICE BRUTINEL, opinion of the Court:

**¶1**        Mertola, LLC, sued Alberto Santos and his wife Arlene Santos (collectively, "Santos") to collect an outstanding credit-card debt. Although the credit-card agreement gave the creditor the option of declaring the debt immediately due and payable upon default, we hold that even if that option was not exercised, the cause of action to collect the entire debt accrued as of the date of Santos's first uncured missed payment. Mertola's claim was barred by the statute of limitations six years after that date pursuant to A.R.S. § 12-548(A)(2).

## I.  BACKGROUND

**¶2**        Santos acquired a credit card from Washington Mutual Bank ("the Bank"). The card was issued with a $25,000 credit limit under the terms of the Bank's Account Agreement, which required monthly minimum payments with interest. Under the Account Agreement, if Santos "fail[ed] to pay any amount due," the Bank had the right to "declare [the] Account balance immediately due and payable." The Account Agreement further stated that Santos waived any right to notice of acceleration.

**¶3**        From August 2007 to January 2008, Santos repeatedly made late minimum payments, and pursuant to the Account Agreement the Bank increased its finance charges and began charging late fees. Santos missed the February 2008 payment completely and never made another minimum payment, although he made a $50 payment — below the minimum due — in August 2008.

**¶4**        The account continued to accrue interest until the Bank charged it off (i.e., treated it as a bad debt) later in 2008, at which point the unpaid balance was $17,066.91. Eventually, Mertola acquired Santos's debt

and, on July 18, 2014, sued for breach of the Account Agreement, seeking the entire outstanding balance.

**¶5**        Santos moved for summary judgment, arguing that the claim was barred by the six-year statute of limitations applicable to credit-card debt under § 12-548(A)(2).  Santos maintained that the Bank's cause of action to recover the entire debt accrued after the first missed payment in February 2008.  Mertola countered that a missed payment gives the creditor the right to sue only for that payment.  According to Mertola, the cause of action for the entire debt could not accrue until the creditor accelerated the debt.  The superior court granted Santos's motion, finding that "all of the breaches" alleged by Mertola "occurred more than six years prior" to it filing this action.

**¶6**        The court of appeals reversed, agreeing with Mertola that Santos's missed payments, by themselves, gave the creditor the right to sue only for those payments.  *Mertola, LLC v. Santos*, 241 Ariz. 572, 574 ¶ 8, 575 ¶ 13 (App. 2017).  "But the bank could not sue to collect the outstanding balance on the account unless and until [Santos] failed to comply with a demand for payment in full or a notice by the lender (or, later, by Mertola) that it was accelerating the debt."  *Id.* at 574 ¶ 8.  The Bank did not notify Santos that it was accelerating the debt when it charged off the account, and neither the Bank nor Mertola ever made a demand for payment in full.  *Id.* Accordingly, the court concluded that the statute of limitations did not bar Mertola's action.  *Id.*

**¶7**        We granted review to decide when the statute of limitations commences on credit-card debt subject to an optional acceleration clause, a question of statewide importance that is likely to recur.  We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## II.  DISCUSSION

**¶8**        The accrual of the cause of action and the interpretation of a statute of limitations are legal questions, which we review de novo.  *See Samiuddin v. Nothwehr*, 243 Ariz. 204, 207 ¶ 7 (2017).

3

¶9        Section 12-548 establishes a six-year statute of limitations for credit-card debt:

> A. An action for debt shall be commenced and prosecuted within six years after the cause of action accrues, and not afterward, if the indebtedness is evidenced by or founded on either of the following:
>
> .   .   .   .
>
> 2. A credit card as defined in § 13-2101, paragraph 3, subdivision (a).

¶10        "As a general matter, a cause of action accrues, and the statute of limitations commences, when one party is able to sue another." *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 182 Ariz. 586, 588 (1995). When a fixed debt is payable in installments, missing a payment gives the creditor the right to sue for the missed payment and the statute begins to run as to that payment. *See Johnson v. Johnson*, 195 Ariz. 389, 391 ¶ 11 (App. 1999). If the parties have not agreed otherwise, "the statute of limitations applies to each installment separately, and does not begin to run on any installment until it is due." *Navy Fed. Credit Union v. Jones*, 187 Ariz. 493, 495 (App. 1996) (quoting 54 C.J.S. *Limitations of Actions* § 153 (1987)). Traditional installment obligations, like the debt at issue in *Navy Federal*, have a fixed principal amount and equal, amortized monthly payments and differ considerably from credit-card agreements.

¶11        The Account Agreement here includes an "acceleration" clause that permitted the Bank, and subsequently Mertola, to demand payment of the entire debt if Santos missed a payment or otherwise defaulted. "Generally, acceleration clauses are viewed as protective devices for the security of the lender," *Browne v. Nowlin*, 117 Ariz. 73, 75 (1977), because they protect the lender from having to sue piecemeal whenever a payment is missed, *cf. Hawkins v. Leake*, 42 Ariz. 121, 125–26 (1933) (holding that where a mortgage lacked an acceleration clause, default did not confer "power to declare the note it secured due before the date fixed by the parties"). Here, as in *Browne*, the Account Agreement's optional acceleration clause allowed, but did not require, the creditor to sue for the entire debt upon default. *See Browne*, 117 Ariz. at 75.

¶**12**     In February 2008, Santos stopped making monthly minimum payments. Although the Bank accepted a $50 payment in August 2008, under the Account Agreement this was insufficient to cure Santos's default because it was less than the minimum amount due.

¶**13**     When a cause of action on credit-card debt accrues is an issue of first impression for this Court. The court of appeals based its holding that the statute ran only on individual installments on a line of decisions that modified the general accrual rule in the context of closed-end installment debt subject to an optional acceleration clause. *Mertola*, 241 Ariz. at 574 ¶ 8 (citing *Baseline Fin. Servs. v. Madison*, 229 Ariz. 543, 544 ¶ 7 (App. 2012), and *Navy Fed.*, 187 Ariz. at 495). *Navy Federal* involved an action to recover a debt on a promissory note. 187 Ariz. at 494. The debtor raised a statute-of-limitations defense because the default had occurred more than six years earlier. *Id.* The court of appeals rejected that defense and held that, although the statute of limitations for a missed payment begins to run when the payment is due, the cause of action as to future installments does not accrue until the creditor exercises the acceleration clause. *Id.* at 495. The court of appeals reaffirmed this rule in *Baseline*, adding that even though the acceleration clause did not require notice to the debtor, a creditor "must undertake some affirmative act to make clear to the debtor it has accelerated the obligation" before the statute of limitations begins to run. 229 Ariz. at 544 ¶ 8.

¶**14**     Here, relying on *Navy Federal* and *Baseline*, the court of appeals held that "the bank could not sue to collect the outstanding balance on the account unless and until [Santos] failed to comply with a demand for payment in full or *a notice by the lender (or, later, by Mertola) that it was accelerating the debt*." *Mertola*, 241 Ariz. at 574 ¶ 8 (emphasis added). Accordingly, the court found that the cause of action accrued with each installment and that Santos, per the Account Agreement, had agreed that the Bank could delay the commencement of the limitations period for the entire debt by not explicitly invoking the acceleration clause. *Id.* ¶¶ 8, 10. Absent the *Navy Federal* and *Baseline* decisions, however, the entire debt would be due and owing on default, without notice of acceleration. Nothing in the Account Agreement requires such notice; rather, notice of acceleration is specifically waived. The Agreement provides: "On your default, we may, *without further demand or notice*, cancel your credit privileges, declare your Account balance immediately due and payable and invoke any remedy we may have." (emphasis added).

¶15 The court of appeals' decisions in *Navy Federal* and *Baseline* considered only installment contracts for closed accounts, such as promissory notes. *See Account*, Black's Law Dictionary (10th ed. 2014) (defining "Closed Account" as "[a]n account that no further credits or debits may be added to but that remains open for adjustment or setoff.") The court of appeals here could identify no "reasoned argument" for treating credit-card debt and closed-account debt differently for accrual purposes. *Mertola*, 241 Ariz. at 574 ¶ 9.

¶16 But such closed-account or closed-end installment contracts, such as promissory notes, are unlike and materially distinguishable from credit-card contracts. *See Smither v. Asset Acceptance, LLC*, 919 N.E.2d 1153, 1159 (Ind. Ct. App. 2010).[1] In closed accounts, the principal amount of the debt is fixed and there is a "defined schedule of repayment" specifying precisely the size of each payment (generally equal payments amortized over a fixed period of time) and when the payment falls due, "until the debt is fully repaid." *Id.* By contrast, credit-card contracts may establish a credit

---

[1] The court of appeals was persuaded that, "given the Arizona legislature's deliberate decision to treat credit card and open accounts differently for purposes of limitations," open-account accrual rules should not apply to credit-card debt. *Mertola*, 241 Ariz. at 575 ¶ 12. But although the legislature created a specific statute of limitations for credit-card debt, that does not change the nature of the debt. We agree with the Indiana and Ohio courts of appeals that credit cards are akin to open accounts. *See Smither*, 919 N.E.2d at 1160 (finding that the definition of "open account" "encompasses credit card agreements: the precise amount of indebtedness that a customer may incur is unknown and fluctuating and the account is kept open in anticipation of future transactions, unless one of the parties decides to close it"); *Jarvis v. First Resolution Mgmt. Corp.*, 983 N.E.2d 380, 389 (Ohio Ct. App. 2012) ("The issue of when a claim accrues regarding credit card debt is unsettled, in part because courts have not consistently categorized credit card accounts. We reject Ms. Jarvis' argument that they are analogous to installment contracts. This Court concludes that credit card accounts are more properly categorized as open accounts." (citation omitted)). And § 12-548 is silent as to when a cause of action on credit-card debt accrues: it merely establishes a six-year statute of limitations to collect that debt.

limit, but the ultimate amount of consumer debt "is unknown at the outset and fluctuates, depending on how the card is used." *Id.* Likewise, the amount of the monthly payment and the date for payment in full fluctuate depending on the amounts charged, the current interest rate, and the amount of the monthly payment above the minimum required by the contract. And making only the minimum payment will increase the amount of interest and the time required to repay the balance, which must be noted on monthly credit-card statements under federal law. *See* 15 U.S.C. § 1637(b)(11)(A).

**¶17** Statutes of limitations are designed to protect defendants "from stale claims and uncertainty about potential unresolved claims." *Flynn v. Campbell*, 243 Ariz. 76, 80–81 ¶ 10 (2017). Because a closed-end installment contract involves an exact sum that must be paid in full in equal payments by an agreed-on date, a cause of action for the entire balance owed will accrue no later than that date. After that date, the creditor may not prevent the statute of limitations from running simply by refusing to accelerate the debt.

**¶18** Under credit-card contracts like the one at issue here, however, the date when the entire debt will become due is uncertain and may not occur until far in the future. To hold that a cause of action on the debt does not accrue until the creditor exercises his right to accelerate would vest the creditor with unilateral power to extend the statutory limitation period and permit interest to continue to accrue, long after it is clear that no further payments will be made, subject only to a standard of reasonableness and other equitable doctrines. This would functionally eliminate the protection provided to defendants by the statute of limitations. We decline to extend such power to the creditor. As aptly expressed by the Iowa Supreme Court:

> While the acceleration clause is for the creditor's protection he should not be permitted to divert it to another purpose. *It is a shield, not a sword.* It is to enable him to take steps to enforce payment or prevent further default, not to impose an additional interest burden upon an already distressed debtor.

*Wentland v. Stewart*, 19 N.W.2d 661, 667 (Iowa 1945) (emphasis added).

¶19 The court of appeals here found "no reason to think that, given the economic realities, a lender would decide to put off pursuing a claim against a cardholder simply to allow interest to continue to accrue." *Mertola*, 241 Ariz. at 574 ¶ 11. But, for at least two reasons, a credit-card company has less incentive than a closed-account creditor to accelerate a debt. First, upon default the interest rate charged increases, in this case to 23.99%. When a credit-card company delays acceleration, the compounding of default interest substantially increases the total amount owed. Selling the debt to a third-party debt collector like Mertola is likely more profitable than attempting to immediately collect from a defaulted debtor who is already unable or unwilling to pay. Second, debt on a closed account, unlike credit-card debt, is often secured by collateral, requiring the creditor to accelerate the debt to exercise the right to repossess or foreclose. Indeed, proceeding against collateral is effective notice of acceleration. *Cf. Baseline*, 229 Ariz. at 544 ¶¶ 2–3 (describing the repossession of a debtor's automobile). Credit-card debt is typically unsecured.

¶20 The court of appeals also noted that "both sides can benefit from a rule that allows the lender time to permit the cardholder [to] bring the account current." *Mertola*, 241 Ariz. at 574 ¶ 11. This is surely correct. But the legislature determined, in establishing a statute of limitations, that six years following default is long enough to bring an action to collect a credit-card debt.

¶21 Without deciding whether to adopt the *Navy Federal/Baseline* holding for other types of debt, we decline to apply it to credit-card debt. Consistent with our decision in *Gust, Rosenfeld*, we hold that when a credit-card contract contains an optional acceleration clause, a cause of action to collect the entire outstanding debt accrues upon default: that is, when the debtor first fails to make a full, agreed-to minimum monthly payment. *Accord Taylor v. First Resolution Inv. Corp.*, 72 N.E.3d 573, 588 (Ohio 2016). This rule will encourage creditors to promptly begin their collection efforts and protects debtors from stale claims. *See Navy Fed.*, 187 Ariz. at 495 (acknowledging the incentive to begin collection efforts when a cause of action accrues at default). But, as we held in *Browne*, a debtor may cure a default if the creditor accepts a payment of arrearages that brings the account current consistent with the parties' contract. 117 Ariz. at 75. By allowing the debtor to cure the default, the creditor relinquishes its pending cause of action to collect the debt, and the statute of limitations commences

only upon a new default. Partial repayment, however, does not cure the default or reset the limitations period.

**¶22** This bright-line rule establishes a clear accrual date and respects creditors' contract rights to choose not to accelerate credit-card debt, at least for six years following a borrower's default. Parties remain free to contractually define default and otherwise negotiate repayment of debt. And this rule permits parties to exercise other statutory or contractual rights to extend the time to negotiate settlement of the debt such as an agreement to pay some or all the outstanding debt, thus curing the default and stopping the statute of limitations from running. Mertola's action against Santos is barred by § 12-548(A)(2) because it was filed more than six years after Santos defaulted on the credit-card payments.

### III. CONCLUSION

**¶23** We vacate the court of appeals' opinion and affirm the trial court's summary judgment in favor of Santos. We award Santos reasonable attorney fees pursuant to the Account Agreement and costs pursuant to A.R.S. § 12-341.