

FILED

Jun 12 2019, 9:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Robert R. Faulkner
Evansville, Indiana

ATTORNEYS FOR APPELLEE

David J. Jurkiewicz
Nathan T. Danielson
Christina M. Bruno
Bose McKinney & Evans LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Dean Blair and Paula Blair,

*Appellants/Cross-Appellees-Defendants/Counterclaimants,*

v.

EMC Mortgage, LLC,

*Appellee/Cross-Appellant-Plaintiff/Counterclaim Defendant.*

June 12, 2019

Court of Appeals Case No.
18A-MF-808

Appeal from the
Vanderburgh Superior Court

The Honorable
Richard G. D'Amour, Judge

Trial Court Cause No.
82D07-1207-MF-3333

**Kirsch, Judge.**

[1] Dean and Paula Blair ("the Blairs") appeal the trial court's order that foreclosed their interest in two mortgaged properties and that entered a money judgment for EMC Mortgage, LLC ("EMC"). The Blairs raise eight issues, but we reach

only one: whether the trial court erred in granting only partial relief to the Blairs on their statute-of-limitations defense.[1]

[2] On cross appeal, EMC raises one issue: whether the trial court erred in not entering summary judgment for EMC where the Blairs' request for more time to respond to EMC's motion for summary judgment was not timely.

[3] We reverse.

## Facts and Procedural History

[4] On December 21, 1992, the Blairs signed a promissory note in the principal amount of $110,300.00 in favor of United Companies Lending Corporation ("UCLC") ("the Note"). *Appellants' App. Vol. 2* at 57-60. The Note contained an optional acceleration clause, which allowed UCLC to decide whether to accelerate the loan balance following a default. *Id.* at 58. The Note was secured by a mortgage ("the Mortgage") on two properties, one at 916 Wortman Road, Evansville, Indiana and the other at 2237 Herbert Avenue, Evansville, Indiana. *Id.* at 62; *Tr. Vol. II* at 23-24. The Mortgage gave UCLC the option to accelerate the Mortgage upon default of the Note. *Appellants' App. Vol. 2* at 64-65. On November 17, 1993, the Blairs sued UCLC and its agent, John Ash ("Ash"), alleging breach of contract and various torts, including fraud

---

[1] To the extent that the trial court granted relief to the Blairs on their statute-of-limitations defense, EMC does not challenge that ruling. *Appellee's Br.* at 32.

and intentional infliction of emotional distress ("the Ash lawsuit"). *Appellants' App. Vol. 3* at 15-23, 95.

[5] The monthly installment payment on the Note was $1,469.36. *Tr. Vol. II* at 48-49. After making regular payments on the Note for approximately two-and-one-half years, the Blairs defaulted, making their last payment on June 19, 1995. *Id.* at 35-36. On August 27, 1997, the Blairs filed a Chapter 13 bankruptcy case ("the Blair Bankruptcy"), which automatically stayed the Ash lawsuit. *Appellants' App. Vol. 3* at 24. On December 16, 1997, the bankruptcy court lifted the bankruptcy stay as to UCLC, allowing it to proceed with its foreclosure action in state court. *Id.* at 24-25. On October 31, 1998, the trial court in the Ash lawsuit granted UCLC leave to file its counterclaim for foreclosure against the Blairs. *Id.* at 96.

[6] UCLC filed for Chapter 11 bankruptcy on March 1, 1999 ("the UCLC bankruptcy"). *Id.* at 28; 96-97. On July 20, 2000, the Note and Mortgage were assigned to EMC. *Appellants' App. Vol. 2* at 67. About six weeks later, on September 23, 2000, the bankruptcy court entered an order approving an asset purchase agreement involving many of UCLC's assets, including the Note and Mortgage in this case. *Id.* at 106-11. When EMC bought the Note and Mortgage on September 23, 2000, the Ash lawsuit and the Blair bankruptcy were still pending. *Id.* at 95-99. On October 2, 2003, the Blairs obtained their bankruptcy discharge. *Appellants' App. Vol. 3* at 78.

[7] Meanwhile, Ash failed to appear in the Ash lawsuit to contest his liability, and on March 14, 2007, the Blairs obtained a default judgment against him for $300,000.00. *Id.* at 97-98, 126. Although it had purchased the Note from UCLC in 2000, EMC was never named as a defendant in the Ash lawsuit. *Id.* at 95-99. On June 19, 2007, six years after the Note and Mortgage were assigned to EMC, EMC recorded the assignments. *Appellants' App. Vol. 2* at 67.

[8] On June 18, 2009, nearly six years after the Blairs received their bankruptcy discharge, EMC sought to reopen the Blairs' bankruptcy by filing a "Complaint for Declaratory Judgment," asking the bankruptcy court to clarify the extent, validity, and priority of EMC's lien, as well as the impact of the Blairs' partial bankruptcy discharge on EMC's ability to collect the indebtedness due under the Note and Mortgage. *Appellants' App. Vol. 3* at 75.

[9] On January 6, 2012, EMC and the Blairs filed a Joint Stipulation and Joint Motion to dismiss EMC's Complaint for Declaratory Judgment, stipulating the following:

> a. The lien provided for by the terms of the Mortgage survives and is unaffected by the Blair Bankruptcy;
>
> b. The Note and Mortgage at issue herein were not discharged in the [Blair] Bankruptcy;
>
> . . .

e. There has been no determination in the Blair Bankruptcy if EMC Mortgage is the true party in interest as it relates to the enforcement of the Note and Mortgage[.]

*Id.* at 84-85.

[10] JPMorgan Chase Bank, N.A. ("Chase") began servicing the loan for EMC on April 1, 2011, and, three days later sent the Blairs a default notice. *Pl.'s Ex.* 4 at 52. The notice gave the Blairs an opportunity to cure their loan defaults and informed them that the entire loan balance would be accelerated, and foreclosure proceedings would begin if the Blairs did not do so. *Id.* at 53.

[11] On July 5, 2012, EMC filed its foreclosure lawsuit. *Appellants' App. Vol. 2* at 5, 50. EMC sought a personal judgment against the Blairs for the outstanding principal balance, interest, attorney fees, expenses, and costs and a judgment declaring that EMC's Mortgage is a valid and enforceable first priority lien against the mortgaged properties. *Id.* at 52-53.

[12] On September 27, 2012, the Blairs filed their answer to the complaint and raised affirmative defenses and counterclaims. The Blairs alleged that the assignment of the Note and Mortgage from the original lender, UCLC, to EMC was void because the assignment occurred almost two months *before* the bankruptcy court authorized the sale of UCLC's assets to EMC:

> According to Exhibit 1 to the EMC bankruptcy complaint, UCLC assigned the note and mortgage . . . almost two months prior to the date of the only order of the UCLC Delaware Bankruptcy Court which could have approved the transfer.

. . . .

> Even if UCLC had ever been the real party in interest, its attempted transfer to EMC is void because, at the time it was made, it had not been authorized by the Delaware Bankruptcy Court.

*Id.* at 73, 75.

[13] On May 1, 2014, EMC filed a motion for summary judgment on its complaint and the Blairs' counterclaim with supporting designated evidence and supporting brief. *Appellants' App. Vol. 2* at 9; *Appellee's App. Vol. II* at 3, 7, 29. Neither EMC's motion for summary judgment, nor its supporting brief addressed the Blairs' counterclaim that UCLC's assignment of the Mortgage and the Note was void because it was made two months before the bankruptcy court approved the sale of UCLC's assets to EMC. *Appellee's App. Vol. II* at 7-28.

[14] On June 4, 2014, the trial court made a docket entry indicating that the Blairs had failed to file a timely response to EMC's motion for summary judgment and that summary judgment was granted to EMC. *Appellants' App. Vol. 2* at 9. On June 5, 2014, the Blairs filed a motion seeking additional time to respond to EMC's May 1, 2014 summary judgment motion. *Id.* Despite previously indicating that EMC was granted summary judgment, the trial court, on June 5, 2014, granted the Blairs' request for more time to respond to EMC's motion for summary judgment. *Id.* at 10. On June 12, 2014, EMC tendered a proposed summary judgment order, but the trial court did not enter it. *Id.* On December

18, 2014, the Blairs filed their response to EMC's motion for summary judgment and filed their own motion for summary judgment. *Id.* at 12. On the same day, the trial court gave leave to the Blairs to amend their answer by interlineation, allowing the Blairs to raise a statute-of-limitations defense. *Id.* at 12, 131. On January 27, 2016, the trial court denied both motions for summary judgment. *Id.* at 15.

[15]     On June 16, 2016, EMC filed an *in rem* motion for summary judgment, together with supporting designated evidence. *Id.* at 18. On August 18, 2016, the Blairs filed their (1) response to EMC's *in rem* summary judgment motion, and (2) their own motion for summary judgment, together with a supporting designation of evidence. *Id.* at 19.

[16]     On October 6, 2016, the trial court entered an order holding that EMC's complaint was barred by the applicable statute of limitations. *Id.* at 134-72. The order also denied the Blairs' motion for summary judgment. On November 7, 2016, EMC filed a motion to correct error. *Id.* at 20. On February 3, 2017, the trial court granted the motion, thus reversing its ruling on the statute of limitations issue and setting the matter for trial. *Id.* at 21.

[17]     The trial court conducted a bench trial on January 2, 2018. *Tr. Vol.* II at 1. Albert Smith, Jr. ("Smith"), a mortgage banking research officer for Chase, was the sole witness to testify on behalf of EMC. *Id*. at 15-64; 119-22. Smith testified that as of December 7, 2017, the total payoff amount for the Note was $493,333.81. *Id.* at 34.

[18] Smith also testified that EMC sought clarification about the status of the loan by filing a declaratory action in the Blair Bankruptcy case. *Id.* at 29. EMC filed that action on June 18, 2009, almost six years after the Blairs received their partial discharge in bankruptcy court. *Appellants' App. Vol. 3* at 75. Smith did not explain why EMC waited six years after the Blairs' partial bankruptcy discharge to seek such clarification.

[19] On March 7, 2018, the trial court issued its final order. The court granted partial relief to the Blairs on their statute of limitations defense. The court ruled that EMC's July 5, 2012 complaint violated the ten-year statute of limitations in Indiana Code section 34-11-2-11 for installment payments and unpaid interest that accrued before July 3, 2002, and for the escrow payments that EMC advanced before July 3, 2002. *Appellants' App. Vol. 2* at 42. As to the Note, the court ruled that EMC's complaint violated the six-year statute of limitations in Indiana Code section 34-11-2-9 for delinquent payments before July 3, 2006. *Id.* at 43.

[20] To the degree that the trial court denied the Blairs' statute-of-limitations defense, it rejected the Blairs' claim that EMC did not invoke the acceleration clause in a reasonable time:

> Indiana law is clear that "if an installment loan contract or promissory note has an optional acceleration clause, . . . a creditor may (but is not required) to declare all future installments on the loan immediately due and payable after a debtor's default." *Smither v. Asset Acceptance, LLC*, 919 N.E.2d 1153, 1160 (Ind. Ct. App. 2010). Furthermore, the Note in this

case explicitly provides that, "Even if, at time a time which I [Borrower] am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have a right to do so if I am in default at a later time." Note, ¶ 6(D).

. . . .

And while it is true that "'a party is not at liberty to stave off operation of the statute [of limitations] inordinately by failing to make demand," *Smither v. Asset Acceptance, LLC*, 919 N.E.2d 1153, 1160 (Ind. Ct. App. 2010) (quoting *Curry v. U.S. Small Bus. Admin.*, 679 F. Supp. 966, 969-70 (N.D. Cal. 1987), a person who fails to exercise an optional acceleration clause on an installment contract (where demand is not necessary to perfect a cause of action) is not "stav[ing] off operation of the statute of limitations . . ." *Id.* Rather, the statute of limitations begins to run on each individual installment as it becomes due, just as it would in any other installment contract absent acceleration.

*Id.* at 38-39.

[21] The March 7, 2018 final order entered judgment for EMC on the Mortgage in the amount of $193,359.00 plus prejudgment and post-judgment interest, attorney fees, and costs and entered judgment on the Note for EMC in the amount of $76,758.00 plus prejudgment and post-judgment interest, plus attorney fees and costs. *Id.* at 45. It also foreclosed the Mortgage and ordered a sheriff's sale for both the Herbert Avenue and Wortman Road properties. *Id.* The Blairs now appeal, and EMC cross-appeals.

# Discussion and Decision

## I.    EMC's Cross Appeal

We first address EMC's cross appeal because it raises a potentially dispositive issue. EMC argues that the trial court should have abided by its June 4, 2014 entry, which entered summary judgment for EMC because the Blairs failed to file a timely request for more time to respond to EMC's motion for summary judgment. EMC argues that, by allowing the case to proceed, the trial court violated a bright line rule that states that a trial court *shall* enter summary judgment for the movant when the non-movant fails to file a timely response or a timely request for more time to file a response. EMC concedes, however, that this bright line rule comes into play only when the movant has made a prima-facie showing that it is entitled to summary judgment. The Blairs respond that their request for more time to respond to EMC's motion for summary judgment was timely because EMC served its motion to the wrong zip code and because the envelope in which EMC served its motion was post-marked five days later than the service date.

> Pursuant to Rule 56(C) of the Indiana Rules of Trial Procedure, summary judgment is appropriate when there are no genuine issues of material fact and when the moving party is entitled to judgment as a matter of law. On review of a trial court's decision to grant or deny summary judgment, this Court applies the same standard as the trial court. We must determine whether there is a genuine issue of material fact requiring trial, and whether the moving party is entitled to judgment as a matter of law. Neither the trial court nor the reviewing court may look beyond the evidence specifically designated to the trial court.

> A party seeking summary judgment *bears the burden to make prima facie showing* that there are no genuine issues of material fact and that the party is entitled to judgment as a matter of law. Once the moving party satisfies this burden through evidence designated to the trial court pursuant to Trial Rule 56, the nonmoving party may not rest on its pleadings, but must designate specific facts demonstrating the existence of a genuine issue for trial.

*Coffman v. PSI Energy, Inc.*, 815 N.E.2d 522, 526 (Ind. Ct. App. 2004) (emphasis added) (internal citations omitted). If the non-movant fails to meet its responsive burden, a trial court shall enter summary judgment. *Sheehan Constr. Co. v. Cont'l Cas. Co.*, 938 N.E.2d 685, 689 (Ind. 2010). "[A] party who fails to bring an interlocutory appeal from the denial of a motion for summary judgment may nevertheless pursue appellate review after the entry of final judgment." *Keith v. Mendus*, 661 N.E.2d 26, 35 (Ind. Ct. App. 1996).

[23] After a summary judgment motion is filed, "[a]n adverse party shall have thirty (30) days after service of the motion to serve a response and any opposing affidavits." Ind. Trial Rule 56(C). The trial court may alter the time limits set forth in Trial Rule 56 "[f]or cause found . . . upon motion made within the applicable time limit." Ind. Trial Rule 56(I). When service is accomplished by mail, three calendar days are added to an adverse party's response deadline. Ind. Trial Rule 6(E).

[24] EMC is correct that courts have no discretion to alter the time limits of Trial Rule 56, and courts cannot consider summary judgment filings made after the expiration of the time limitations set forth in Trial Rule 56. *See Borsuk v. Town*

*of St. John*, 820 N.E.2d 118, 123 n.5 (Ind. 2005) ("When a nonmoving party fails to respond to a motion for summary judgment within 30 days by either filing a response [or] requesting a continuance . . ., the trial court cannot consider summary judgment filings of that party subsequent to the 30-day period."); *see also Desai v. Croy*, 805 N.E.2d 844, 848-49 (Ind. Ct. App. 2004). Thus, EMC contends that, because the Blairs did not file a timely response and because it made a prima-facie showing in its motion for summary judgment, the trial court should have adhered to its June 4, 2014 entry that EMC was entitled to summary judgment.

[25]   Here, we find that EMC was not entitled to summary judgment because it failed to make a prima-facie showing that summary judgment was proper. EMC failed to make this showing both here on appeal and in its motion, supporting brief, and designated evidence filed in the trial court. On appeal, EMC asserts that it made a prima-facie showing in the trial court, but its appellate brief does not summarize the claims in its foreclosure complaint, describe the allegations in its motion for summary judgment, point to relevant designated evidence, or make a legal argument as to why it was entitled to judgment as a matter of law. EMC's appellate brief also fails to discuss the Blairs' affirmative defenses and counterclaims upon which EMC also sought summary judgment. As a result, EMC fails to satisfy its burden to make a cogent argument in support of its claim that the trial court should have entered summary judgment for EMC. Thus, EMC has waived this issue. *See Basic v. Amouri*, 58 N.E.3d 980, 984 (Ind. Ct. App. 2016).

[26]     Waiver notwithstanding, EMC's motion for summary judgment, supporting brief, and designating materials did not establish a prima facie case that EMC was entitled to summary judgment. Its motion and supporting materials did not address the Blairs' counterclaim that the assignment of Mortgage and Note from UCLC to EMC was void.

[27]     The Blairs' counterclaim alleged:

> According to Exhibit 1 to the EMC bankruptcy complaint, UCLC assigned the note and mortgage . . . almost two months prior to the date of the only order of the UCLC Delaware Bankruptcy Court which could have approved the transfer.
>
> . . . .
>
> Even if UCLC had ever been the real party in interest, its attempted transfer to EMC is void because, at the time it was made, it had not been authorized by the Delaware Bankruptcy Court.

*Appellants' App. Vol. 2* at 73, 75. Thus, because EMC did not make a prima-facie showing that it was entitled to summary judgment on the Blairs' counterclaim, the burden did not shift to the Blairs to designate facts demonstrating the existence of a genuine issue for trial and to demonstrate that EMC was not entitled to judgment as a matter of law. *See Coffman*, 815 N.E.2d at 526. Hence, the question of whether the Blairs' request for more time to respond to the motion for summary judgment was timely was irrelevant.

## II.  The Blairs' Appeal

[28]  The trial court's March 7, 2018 final order made specific findings of fact and conclusions thereon.  In reviewing such an order, we apply a two-tiered standard of review, determining whether (1) the evidence supports the findings, and (2) the findings support the judgment.  *See Sullivan Builders & Design, Inc. v. Home Lumber of New Haven, Inc.*, 834 N.E.2d 129, 134 (Ind. Ct. App. 2005).  We will set aside the trial court's findings only if they are clearly erroneous.  *Id.*  A finding is clearly erroneous only if no facts in the record support the finding either directly or by inference.  *Id.*  We do not reweigh the evidence, and we consider the evidence most favorable to the judgment, drawing all reasonable inferences in favor of the judgment.  *Id.*  We need not defer to the trial court's conclusions of law, however, and a judgment is clearly erroneous if it relies on an incorrect legal standard.  *See Freese v. Burns*, 771 N.E.2d 697, 701 (Ind. Ct. App. 2002).

[29]  The Blairs argue that EMC's foreclosure action is barred by the applicable statutes of limitations because EMC did not accelerate the Note and Mortgage within a reasonable time.  The statute of limitations on a note is six years from the date that the cause of actions accrues, and the statute of limitations on a mortgage is ten years from the date the cause of action accrues.  *See* Ind. Code § 34-11-2-9; Ind. Code § 34-11-2-11.  The Blairs observe that EMC filed its 2012 foreclosure action approximately seventeen years after the Blairs made their last payment in 1995 and note that EMC filed its 2009 Complaint for Declaratory Judgment in the bankruptcy court to seek clarification about the status of the

Note and Mortgage more than eleven years after UCLC was granted relief from the automatic stay issued in the Blair Bankruptcy.

[30] The purpose of a statute of limitation is to encourage the prompt presentation of claims. *Perryman v. Motorist Mut. Ins. Co.*, 846 N.E.2d 683, 689 (Ind. Ct. App. 2006). Statutes of limitation spare the courts from litigation of stale claims and prevent a person from defending a case after memories have faded, witnesses have died or disappeared, and evidence has been lost. *Id.*

[31] Actions to enforce promissory notes "must be commenced within six (6) years after the cause of action accrues." Ind. Code § 34-11-2-9. Actions to foreclose mortgages "must be commenced within ten (10) years after the cause of action accrues." Ind. Code § 34-11-2-11. The determination of when a cause of action accrues is generally a question of law. *Imbody v. Fifth Third Bank*, 12 N.E.3d 943, 945 (Ind. Ct. App. 2014). Where, as here, an installment contract contains an optional acceleration clause, the statute of limitations to collect the entire debt does not begin to run immediately upon the debtor's default. *See Smither*, 919 N.E.2d at 1160. Instead, the statute generally begins to run only when the creditor exercises its option to accelerate. *Imbody*, 12 N.E.3d at 945. If an installment loan contract or promissory note has an optional acceleration clause, a creditor may declare all future installments on the loan immediately due and payable upon the debtor's default. *Id.* However, "a party is not at liberty to stave off operation of the statute [of limitations] inordinately by failing to make demand." *Smither*, 919 N.E.2d at 1160. In such cases, the time for demand is a reasonable time and a matter of the parties' expectations. *Id.*

[32]     We applied these principles in *Heritage Acceptance Corp. v. Romine*, 6 N.E.3d 460 (Ind. Ct. App. 2014). In 2005, Romine bought a used Pontiac Firebird from Royal Motors on an installment contract. *Id.* at 461. The contract stated that Heritage would be Royal Motors' assignee. *Id.* The contract included an acceleration clause, which allowed Royal Motors to demand immediate payment of all remaining payments upon Romine's default. *Id.* at 462. Romine defaulted, making his last payment in May of 2007. *Id.* Six years later, in April of 2013, Heritage invoked the acceleration clause and demanded that Romine pay the entire amount owned. *Id.* Romine could not pay, and Heritage sued Romine in small claims court. The trial court entered judgment for Romine because Heritage did not commence its action within the four-year statute of limitations set forth in Indiana Code section 26-1-2-725. *Id.* at 464. Our court affirmed, concluding that Heritage did not invoke the acceleration clause within a reasonable time:

> Here, Heritage waited until early April 2013 to exercise its right to demand full payment under the optional acceleration clause. Romine had tendered his last payment almost six years earlier. . . . We conclude, as did the Court in *Smither*, that waiting after these events have occurred to exercise an optional acceleration clause is unreasonable. Thus, Heritage's long-delayed attempt to exercise the acceleration clause did not prevent the four-year statute of limitations from taking effect, and its complaint is barred.

*Id.* at 464.

[33] *Heritage* relied on *Smither*, 919 N.E.2d at 1153. Smither obtained a credit card from a bank and ran up a debt of $1,700.00 before he stopped making payments in February 2000. *Id.* The bank continued to send him monthly billing statements. *Id.* In December 2001, Asset Acceptance, LLC ("Asset"), bought the loan from the bank and in May of 2006, requested full payment of the debt under the contract's optional acceleration clause and sued Smither. *Id.*

[34] Asset prevailed on summary judgment, and Smither appealed. A panel of this court noted that the contract had an optional acceleration clause, but Asset did not exercise the clause until May 2006, by which time Smither had been in default for over six years and the statute of limitations had run. *Id.* at 1161. The court stated that "waiting until after the statute of limitations has passed following default before making demand for full and immediate payment of a debt is per se an unreasonable amount of time to invoke an optional acceleration clause and cannot be given effect." *Id.* at 1161-62. The court also noted, "a party is not at liberty to stave off operation of the statute [of limitations] inordinately by failing to make demand." *Id.* at 1161. Thus, *Smither* concluded that Asset's long-delayed exercise of the acceleration clause did not prevent the statute of limitations from taking effect. *Id.* at 1162.

[35] EMC attempts to distinguish *Smither* by arguing that it deals with significantly different facts, noting that the credit card account at issue in *Smither* was "more akin to an open account or unwritten contract than a promissory note or installment loan contract." *Appellee Br.* at 36 (quoting *Smither*, 919 N.E.2d at 1161). Accordingly, EMC posits, *Smither* found it unclear whether it "ought to

incorporate the law regarding optional acceleration clauses into this case." *Id.* (quoting *Smither*, 919 N.E.2d at 1161).

[36] We disagree with EMC's contention that *Smither* does not apply here because a panel of this court recently applied *Smither* to a case involving a mortgage and promissory note, as does the case before us today. *See Stroud v. Stone*, No. 18A-CC-1722, 2019 WL 1496836 (Ind. Ct. App. Apr. 5, 2019). In *Stroud*, Stone on April 29, 2003, deeded two properties, including a mobile home park, to Heartland Homestead LLC ("HH LLC"). *Id.* at *2. Stroud was one of two partners in HH LLC. *Id.* Fifth Third Bank ("Fifth Third") financed part of the purchase price and took a first mortgage on the properties. *Id.* Stone received cash at the closing and a $100,000.00 promissory note. *Id.* The promissory note contained an acceleration clause. *Id.* at *3. The promissory note was secured by an "Open-End" Mortgage, which, despite that designation, required the specified amount for installment payments of $833.33 per month beginning June 1, 2003 until the amount was paid in full by the maturity date of July 1, 2013. *Id.* Because the mobile home park was not as profitable as Stroud had hoped, he made his last payment in May of 2008, and Fifth Third filed a foreclosure action on October 31, 2008. *Id.* To avoid foreclosure, Stroud hatched a complicated scheme that would eventually result in creation of the Heartland Land Trust ("the Trust"), which would buy the properties from Fifth Third. *Id.* at *3-*6. Those efforts fell through, and on February 23, 2016, Stone initiated an action on the promissory note, suing Stroud, HH LLC, and the Trust for, *inter alia*, repayment of the promissory note. *Id.* at *14. In finding

that Stone did not file suit within a reasonable time and that his action on the promissory note was time barred, the *Stroud* panel observed that Stone waited nearly eight years after Stroud had defaulted to demand payment, two years beyond the six-year statute of limitations under Indiana Code section 34-11-2-9. *Id.* This was a period the court found was "a per se unreasonable amount of time to wait before invoking an acceleration clause." *Id.* (quoting *Smither*, 919 N.E.2d at 1161-62).

[37] Guided by *Stroud*, we find that EMC delayed an unreasonable amount of time by waiting until April of 2011 to invoke the acceleration clause. *Tr. Vol. II* at 35-36. Sixteen years earlier, in June of 1995, the Blairs had defaulted. *Pl.'s Ex. 4* at 52. In December of 1997, the bankruptcy court lifted the stay that had prevented UCLC from seeking foreclosure against the Blairs, and in August of 1998, the trial court in the Ash lawsuit had granted leave to UCLC to pursue a foreclosure action. *Appellants' App. Vol. 3* at 24-25, 96. The rights to the Note and the Mortgage were assigned to EMC in 2000. *Appellants' App. Vol. 2* at 67. At that time, EMC could have taken its first steps to pursue its rights under the Note and Mortgage, but it did not. Considering that the Blairs had defaulted five years earlier, this would have been the prudent course for EMC to have taken.

[38] Even more puzzling is EMC's decision to wait until June of 2009 to file its Complaint for Declaratory Judgment. *Appellants' App. Vol. 3* at 75. This was nearly six years after the Blairs received their bankruptcy discharge. *Id.* at 78. During his trial testimony on behalf of EMC, Smith did not explain why EMC

waited six years to seek such clarification. On appeal, EMC likewise offers no explanation for this delay. EMC's decision to wait six years after the Blairs received their partial bankruptcy discharge to seek clarification about the status of the Note and Mortgage was unreasonable, and this delay did not prevent the statutes of limitations from taking effect. *See Heritage Acceptance Corp.*, 6 N.E.3d at 464. EMC waited an unreasonable time to accelerate its Note and Mortgage. By doing so and by failing to make demand within a reasonable time, its rights are time-barred. *Smither*, 919 N.E.2d at 1160.

Reversed.

Riley, J., and Robb, J., concur.